No. 30,112.

THOMAS TSCHREPPEL, *Appellee*, v. THE MISSOURI-KANSAS-TEXAS
RAILROAD COMPANY, *Appellant*.

(2 P. 2d 845.)

Opinion filed December 12, 1931.

*W. W. Brown, C. E. Pile,* both of Parsons, and *Douglas Hudson,* of Fort Scott, for the appellant.

*James G. Sheppard,* of Fort Scott, and *John A. Hall,* of Pleasanton, for the appellee.

The opinion of the court was delivered by .

BURCH, J.: The action was one for damages for injuries sustained by a section man on defendant's railroad. Plaintiff recovered, and defendant appeals.

Plaintiff was riding on a section motor car, operated by the section foreman, Smith, over a roadbed composed of chat, gravel, cinders, and other material. When the car was operated at a high rate of speed, loose material would be raised. While the car was so operated, a foreign substance struck plaintiff in his left eye. The car was stopped, and a fellow employee removed a piece of foreign matter from the eye. Plaintiff worked that day, but the next morning he went to a doctor. The doctor found a foreign body embedded in the sclerotic coat, and removed it. The doctor also removed a larger substance which he found loose under the upper lid. The eyeball swelled, plaintiff suffered great pain, and the eye was treated from July 12, 1927, the day after the accident, to October 8. There was abundant evidence that plaintiff was seriously injured, and it

may be observed here that the damages he received were not excessive.

The affirmative defense was assumed risk. The answer made the very illuminating statement that the risks and dangers of the employment at the time and place of injury were the risks and dangers of the employment, and that plaintiff assumed them. Technically this answer raised no issue except with respect to those risks which usually and ordinarily attended plaintiff's work and which plaintiff assumed when he entered the employment. Those risks did not include what are frequently called the extraordinary risks which arise from the employer's negligence, and which are assumed only under certain conditions. However, the case was tried as if assumed risk of the employer's negligence was an issue in the case.

Plaintiff's evidence was contradicted by defendant's evidence in matters material and immaterial, and defendant's evidence tended to show that if plaintiff's indisputable injury did arise out of the employment, it was a mere incident of the employment. The jury settled the conflicts in the testimony, and whether plaintiff assumed risk of the injury he received depended on the testimony and inferences from testimony favorable to him.

There was sufficient evidence the injury was the result of the foreman's negligence, and the jury so found. The question in the case was whether defendant knew or should have known, and besides that, appreciated or should have appreciated, the danger consequent upon the negligence.

It would serve no useful purpose to rehearse the testimony. Briefly, plaintiff had worked on the section about four weeks before he was injured. The first time he rode on the motor car the foreman operated it so fast plaintiff lost his hat, and the foreman "jollied" him about the speed. The foreman said that was nothing, that at Deerfield he ran the car so fast it caught fire and the men had to jump off, and one was injured. Afterwards plaintiff learned the foreman would persist in operating the car too fast. He learned the car would raise dust and cinders and particles from the roadbed. Some other employees got things in their eyes, but the evidence discloses nothing serious. After he himself was injured, it was easy to relate cause and consequence, but whether his knowledge of danger and his appreciation of danger were such that before he was injured

he was committed to an assumption of risk of the actual danger was a question for the jury to determine, and not one for the district court to decide on demurrer to evidence or motion for directed verdict.

In defendant's supplemental abstract appears the following:

"There was no evidence showing, or tending to show, that plaintiff did not know the dangers to his eyes of flying particles of sand and dust, and that the movement of the car would raise dust."

The statement avails defendant nothing. Assumption of risk was an affirmative defense, and unless there was evidence that defendant did know and did appreciate the danger, so cogent the court was bound to declare the fact as a matter of law, the case was properly submitted to the jury.

Defendant complains of the instruction given the jury respecting assumption of risk. In the course of the instruction the court said that if plaintiff had knowledge of the danger from dust and cinders incident to the work, and appreciated the danger, and if he made no complaint about dust and cinders or speed of the motor car, he assumed the risk by continuing to work under the circumstances. Defendant contends plaintiff did make complaint the first day he worked. The abstract contains the following:

"The first thing that morning, we run the track. Ran it to see if there was a rail broke. Smith was sitting on the west side of the motor car. He was on the opposite side from me. We went three miles south, stopped and turned around, and came back. Coming back a piece of cinder flew in my eye. The car was going between thirty and thirty-five miles an hour. I know when I drive an automobile thirty miles an hour, he drove that motor car faster. I told him he goes too fast. He said, 'That's all right.' By that time I get that piece of cinder in my eye, too. I got hold of the car so I would not fall off. I just held onto what I could hold to. I held on with my hands on the car. I held on with two hands. The car was bouncing around one side and to the other side."

"I told Robert Smith the time he run the track he was running too fast. I was then on the east side of the motor car. We carried our tools on that car. The tools were under our feet. We kept our feet on top of the tools. I told Mr. Smith he was going too fast that morning just before I got hurt.

"Q. You never said anything about it before? A. No. When I told him not to run so fast he said, 'That is nothing.'"

The quoted testimony referred to protest against speed a moment before plaintiff was injured. In connection with that subject plaintiff said flatly he had never said anything about it before.

Defendant's supplemental abstract shows the following:

"Q. Now, you say that on the first day you went to work Mr. Smith told you he could drive these motor cars so fast that he could burn them up—is that right? A. I lost my hat, he went so fast the first day, and he said, that is nothing, yet he run the motor car at Deerfield until she caught fire and the men had to jump off, and I just lost my hat.

"Q. The first day you went to work he drove that car so fast you lost your hat? A. Yes, sir.

"Q. And he told you that wasn't anything you were going to get when you worked there, because he had driven a car so fast over at Deerfield that it caught on fire and the men had to jump off the car to save themselves? A. Yes, sir."

In rebuttal plaintiff testified on cross-examination as follows:

"The first day I went to work he run so fast I lost my hat. He told me that wasn't anything I was going to get when I worked there. He said he drove a car so fast over at Deerfield that it caught fire and the men jumped off the car. That was the first time I worked for him. I then worked from that time until I got the speck in my eye. I worked every day until the time I got the speck in my eye. After I lost my hat the first day and he told that, I never could say anything more."

This testimony does not disclose what plaintiff said, or that he said anything, and this court cannot read into the record a statement amounting to a definite complaint against working conditions. Plaintiff's idiomatic speech appears throughout his testimony, and it is plain he meant he took the foreman's raillery seriously, and after that could say nothing. The result is, there was no evidence that on the first day plaintiff made complaint about speed or anything else, and there is nothing even remotely indicating he then had any appreciation of danger from dust and cinders raised from the track by the high speed of the car. Because there was no evidence of complaint, defendant could suffer no possible prejudice by inclusion of lack of complaint in the instructions.

The instruction relating to assumption of risk was otherwise unexceptionable and adequate, and no error was committed in refusing to give the requested instructions relating to that subject. Defendant discusses at length in his brief the subject of complaint followed by promise to remedy. The evidence did not warrant submission of that subject to the jury, and it was not submitted to the jury. The petition pleaded complaint and assurance of no danger, but that subject was not submitted to the jury.

The jury returned the following special findings of fact:

"7. At what rate of speed was the motor car moving at the time some foreign object struck plaintiff's left eye about 8:05 o'clock a. m., July 11, 1927? A. At higher rate of speed than company's rule.

"10. If you find a verdict in favor of the plaintiff, on what ground, or grounds, of negligence, which you find to be the proximate cause of plaintiff's injury, do you base your verdict? A. They were driving motor car beyond speed limit set by company."

There was undisputed testimony that the company's rules limited speed of the motor car to twelve miles per hour in open spaces. Defendant contends the negligence found was not pleaded. The negligence pleaded was a dangerous rate of speed, placed at fifty miles per hour. Plaintiff testified the speed at the time of the accident was more than thirty miles per hour. Some of defendant's witnesses said the speed was from fifteen to twenty miles per hour. Evidence of speed in violation of the company's rules was evidence of negligent rate of speed (45 C. J. 1258), and the tenth finding was that negligence constituting proximate cause of the injury was excessive speed. Defendant made no motion to require the jury to return a more definite answer, and the answer given was within the issues and was consistent with the general verdict.

The jury returned the following special finding of fact:

"11. Do you find that condition of track and equipment and operation of equipment, was usual and customary on the occasion of plaintiff's alleged injury; if not, in what respect unusual and in violation of custom? A. As usual."

The question will not be construed to contain what is known in legislative circles as "a joker" regarding speed. It will be considered as relating to general method of operation. If the question did relate to speed, the answer would merely indicate plaintiff should have known of the foreman's negligent operation of the car, which is just one of three conditions essential to assumption of risk.

Other subjects discussed in defendant's brief are sufficiently covered by what has been said, and the judgment of the district court is affirmed.