No. 30,223.

Eldon Whetstine, *Appellee*, v. The Atchison, Topeka & Santa Fe Railway Company, *Appellant*.

(7 P. 2d 501.)

510

*William R. Smith, Alfred A. Scott, C. J. Putt,* all of Topeka, and *Chester Stevens,* of Independence, for the appellant.

*Payne H. Ratner,* of Parsons, and *Harold Medill,* of Independence, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: Eldon Whetstine, an employee of the Atchison, Topeka & Santa Fe Railway Company, brought this action under the federal employers' liability act against the company to recover damages for personal injury sustained in the service of the company caused, as he alleged, by the negligence of the defendant. He recovered damages in the amount of $5,000, and defendant appeals on the ground that the evidence did not justify the verdict and judgment, and it also assigns certain trial errors.

The plaintiff had been in the service of the defendant as a section hand for about six months prior to the injury. The section crew of which he was a member was engaged in doing track work near Liberty. In traveling from one place to another along the line a motor car to which a push car was attached was used in transporting workers and tools back and forth. There were no seats or room for all the men on the motor car, and some of them were directed to ride on the attached push car on which there were no seats, railing or protection of any kind. After completing their work on the evening of the injury, they gathered up their tools, placed them on the push car and started for Liberty, five miles away. Mack Jackson, the foreman of the crew, operated the motor car, and the plaintiff and two others sat on the rear end of the push car with their feet hanging out as they had been instructed to do. There were up and down grades on the line over which they were traveling, and the speed usually traveled by these cars was from twelve to fifteen miles per hour. On this occasion the motor car was pushed up to a speed of thirty-five miles per hour and the speed caused a suction from the roadbed on which there were cinders and gravel, and the cinders rolled up and one of them struck plaintiff's eye. At the

time plaintiff told his fellow workmen of the injury, and it resulted in destroying the sight of the eye and made its removal necessary. Only five special questions were submitted to the jury, and they and the answers to them are as follows:

"1. Was the plaintiff guilty of contributory negligence? A. No.

"2. If you answer the last question 'yes,' was such contributory negligence the proximate cause of his injuries? A. ——.

"3. At what rate of speed was the motor car being operated at the time of and immediately before plaintiff claims to have gotten something in his eye? A. Thirty-five miles per hour.

"4. Was plaintiff's injuries the result of an unavoidable accident? A. No.

"5. If you find for the plaintiff, in what respects was the defendant negligent? A. Excessive speed of motor car."

There is little, if any, contention that the injury resulted from the attributed cause, but the contention of the defendant is that the injury was not one for which the defendant is responsible, nor is it liable for the loss occasioned, but that the danger and risk were assumed by plaintiff. The principal contention is that the risk of flying cinders as the cars sped along over the track was an obvious one, which the plaintiff necessarily knew and appreciated, and therefore the risk was assumed by him. It is argued that he knew that the track was ballasted with cinders, gravel and chat, which could be readily carried by the wind upon those in the cars as they passed over the track; that he knew that the natural suction arising from a moving vehicle would throw up the cinders, and that even assuming that the cars were driven at an unusual and excessive rate of speed on the trip, plaintiff should have known that varied rates of speed would be traveled as they went up and down over the different grades of the track, and therefore he should be held to have assumed the risk of such a hazard, which necessarily absolved his employer from liability for damages by reason of the injury. It is also said that if particles of cinders were thrown against him, he did not shift to another part of the car nor give warning to the driver that the speed was endangering him.

An employee, of course, assumes the ordinary and obvious risks incident to the service he engages to perform, and if he becomes aware of a danger arising in his employment or it is one that an ordinarily prudent person would observe and appreciate, and he continues in the employment, he would assume the risk. If the negligence and danger are not obvious or come up suddenly and cannot be anticipated, or the negligence of the coemployee is such that the

employee has no notice or reason to anticipate the risk, it is not assumed. There are circumstances and elements of the assumption of risk which are matters of fact to be decided by the jury, and here the findings are in favor of the plaintiff. Of course, if all the elements appear without contradiction or any real dispute, the question may be regarded as one of law for the court to determine. Was the danger in this instance an obvious one which plaintiff knew or should have known? There is testimony that plaintiff had previously ridden on the push car, which was six feet wide and seven feet long, at the usual speed, and that he rode there on this occasion because there was not room for all of them in the motor car; that he rode on the rear end of the car, and that conditions and risks were the same on the ends as on the sides of it; that on this trip they were traveling northward against the wind; that he had ridden on the push car before at a speed of twelve to fifteen miles per hour; that flying cinders had not struck the faces of the employees when going at the usual speed, and that he had never before ridden on the car at the excessive rate. It was further shown that when the speed attained on the trip was up to thirty-five or forty miles an hour, and they had gone a distance of two and one-half miles from the starting place, many cinders were being thrown up and one of them struck his eye and caused the injury. There is testimony, too, that plaintiff had not been informed by the foreman when they started that the cars would be operated at the fast speed or one that would suck up and throw cinders in his face and eyes. In *Tschreppel v. Missouri-K.-T. Rld. Co.*, 134 Kan. 251, 5 P. 2d 845, an employee was riding on a motor car which was run at an excessive rate of speed, over a roadbed composed of chat, gravel and cinders, thus raising dust and cinders, and a particle struck plaintiff's eye and seriously injured it. The question raised was that plaintiff assumed the risk of the danger and consequent injury. It was conceded that the risks which ordinarily attend the work when plaintiff was employed were assumed, but it was said that—

"Those risks did not include what are frequently called the extraordinary risks which arise from the employer's negligence and which are assumed only under certain conditions." (p. 252.)

There was a dispute in the evidence as to the conditions attending the occurrence and whether or not the danger was a mere incident of the employment. It was held that the jury had settled these conflicts, and that whether the employee knew or should have known

and appreciated the danger was a question for the jury, and as there was evidence that plaintiff did not know or appreciate the danger "assumption of risk was an affirmative defense," and so the finding and judgment in favor of the plaintiff were affirmed.

. When plaintiff started on the trip he had a right to assume that the cars would not be operated at an excessive or dangerous speed. In *Ches. & Ohio Ry. v. De Atley*, 241 U. S. 310, a brakeman was sent forward to a telegraph station to obtain information as to track clearance and was expected to mount the train as it came forward to the station, and as it approached the position he had taken to board the train, it was moving at an unusual and dangerous speed, and he, not being aware of the excessive speed, undertook to board it and was thrown under the wheels and his arm cut off. He had been in the employment of the company for some time and had made a number of trips over the line, and it was contended that as he was required on proper occasion to board a moving train he assumed the risk of injury incident to the operation. The court said, among other things, that—

"Plaintiff had the right to presume that the engineer would exercise reasonable care for his safety, and cannot be held to have assumed the risk attributable to the operation of the train at an unusually high and dangerous rate of speed, until made aware of the danger, unless the speed and the consequent danger were so obvious that an ordinarily careful person in his situation would have observed the one and appreciated the other." (p. 314.)

It was insisted that as to his knowledge of the speed, the test is not whether the employee did in fact know the danger, but whether he ought to have known and comprehended. The court remarked:

"This is inconsistent with the rule repeatedly laid down and uniformly adhered to by this court. According to our decisions, the settled rule is not that it is the duty of an employee to exercise care to discover extraordinary dangers that may arise from the negligence of the employer or of those for whose conduct the employer is responsible, but that the employee may assume that the employer or his agents have exercised proper care with respect to his safety until notified to the contrary, unless the want of care and the danger arising from it are so obvious that an ordinarily careful person, under the circumstances, would observe and appreciate them." (p. 315.)

In a later case, *Chicago, R. I. & P. Ry. Co. v. Ward*, 252 U. S. 18, the court had occasion to deal with the matter of assumption of risk and approved the rule just stated. That was a case involving speed where a switchman was thrown from the top of a box car when he was about to apply a brake to a cut of cars. It was the duty of

those handling the operation to do so in such a way that the switch-man would have an opportunity to apply the brakes to the cut. They failed to make the proper cut-off and to retard the speed and cause a slow-down of the car upon the brake that was to be set by the switchman, with the result that he was suddenly thrown from the top of the car and injured. After stating the rule and citing a number of authorities, the court said:

"Applying the principles settled by these decisions to the facts of this case, the testimony shows that Ward had neither warning nor opportunity to judge of the danger to which he was exposed by the failure of the engine foreman to cut off the cars. In the absence of notice to the contrary, and the record shows none, Ward had the right to act upon the belief that the usual method would be followed and the cars cut off at the proper time by the engine fore-man, so that he might safely proceed to perform his duty as a switchman by setting the brake to check the cars which should have been detached. For the lack of proper care on the part of the representative of the railway com-pany while Ward was in the performance of his duty, he was suddenly pre-cipitated from the front end of the car by the abrupt checking resulting from the failure to make the disconnection. This situation did not make the doc-trine of assumed risk a defense to an action for damages because of the negli-gent manner of operation which resulted in Ward's injury, and the part of the charge complained of, though inaccurate, could have worked no harm to the petitioners. It was a sudden emergency, brought about by the negligent opera-tion of that particular cut of cars, and not a condition of danger, resulting from the master's or his representatives' negligence, so obvious that an ordi-narily prudent person in the situation in which Ward was placed, had oppor-tunity to know and appreciate it, and thereby assume the risk." (p. 22.)

In *Hook v. Railway Co.*, 116 Kan. 556, 227 Pac. 531, it was said:

"In order for the defense of assumed risk to be established it was not enough that the plaintiff knew of the physical facts as they existed; he must have known and appreciated the danger. (*Brizendine v. Railroad Co.*, 96 Kan. 691, 153 Pac. 495; *Seaboard Air Line v. Horton*, 233 U. S. 492.) We do not think that it can be said as a matter of law that the plaintiff appreciated or was under an obligation to appreciate the danger, or that the danger was not one that the defendant was bound to take into account and provide against. 'It cannot be said as a matter of law either that the danger . . . was so obvious that the plaintiff must have known of it, or that it was so remote that the defendant could not be charged with knowledge of it. Both questions were for the jury.' (*Tecza v. Sulzberger & Sons Co.*, 92 Kan. 97, 101, 140 Pac. 105.)" (p. 559.)

See, also, *Southern Railway Co. v. Jaynes*, 86 Ind. App. 451, 140 N. E. 556; *Ewig v. Chicago, M. & S. P. Ry. Co.*, 167 Wis. 597; *Galveston H. & S. A. Ry. Co. v. Contois* (Tex.), 288 S. W. 154. Within the rule of these authorities the plaintiff had a right to presume that

the foreman would exercise reasonable care for his safety in the operation of the cars and not operate them at an unusual and dangerous speed, which the evidence shows brought about the injury. It is said that he did not warn the driver of the cars that cinders were being sucked up and thrown upon him by the speed they were traveling, and further that he did not change his seat to a place where there would be less risk. In the distance traveled before the injury, two and one-half miles, there was little, if any, time or opportunity for plaintiff to give warnings or to do anything for his protection from the peril. If he had attempted to go forward from the push car to the motor car to protest or warn the driver, he would likely have been thrown off the speeding train and have subjected himself to a charge of contributory negligence, and the same is true as to a change of his seat. It does not appear that a safe seat on the push car was available. It was shown that in riding on the push car the employees had to hold on to its floor with both hands in order to stay on the car. The plaintiff, as we have seen, had no information that the cars were to be driven at the dangerous speed. He had never ridden on the cars at such a rate, and had no reason to anticipate that the foreman contemplated driving at such a speed on the trip. As to him it may be said that the danger was sudden and unexpected. He did know that these cars might be operated at varied speeds within the limits of the usual speed of from twelve to fifteen miles an hour, but under the evidence he had no notice the trip was to be taken at the extraordinary speed of thirty-five miles an hour or one that would shower him with particles of cinders, which resulted in the loss of an eye.

The defendant cites *Blevins v. Union Pac. Rld. Co.*, 133 Kan. 185, 299 Pac. 593, as an authority supporting its contention that the risk was assumed. There the plaintiff, a foreman on a switch engine, was operating in a railroad yard. He had been working in the yard about a year and had been a fireman on a switch engine for three or four months, and was well acquainted with the fact that the engine would throw out large volumes of cinders through the smokestack, especially when the engine was suddenly started. After effecting a coupling, the engineer opened the throttle of the engine to its full capacity, causing a severe exhaust, which threw out a large volume of hot cinders, one of which fell into the plaintiff's eye and injured it. Having full knowledge of the effect of the opening of the throttle and the showering of cinders, the fireman put his head out

of the cab and suffered the damage. It was held that under the circumstances of the operation, the fireman, having full knowledge of the negligence and the consequent danger arising therefrom, put his head outside the cab and therefore assumed the risk. The fireman had been at work on a switch engine for months and knew that the starting and stopping of the engine threw volumes of cinders out of the smokestack; he knew that when the engineer opened the throttle wide, as he did, large volumes of cinders would be discharged, and with this experience and knowledge of the operation, he put his head out of the cab. In the opinion it was said that—

"His own statements clearly indicate that he comprehended the nature and degree of the danger arising from the opening of the throttle and that he voluntarily put his head out of the cab window knowing that he was likely to get a cinder in his eye. He assumed the risk and must abide the consequences." (p. 190.)

This case is not an authority in the present case, where the negligence was not known to plaintiff and where he had no reason to know or anticipate either the negligence or the danger. In the Blevins case the court recognizes and quotes authorities to the effect that the risk is not assumed unless it is known to the employee or is so obvious that an ordinarily prudent person would have observed the one and appreciated the other. Under the evidence it cannot be held that there was error in overruling the demurrer to plaintiff's evidence or that the risk was assumed by plaintiff.

There is complaint of the admission of the testimony of a witness as to the life expectancy of a person twenty-four years of age, that being the age of the plaintiff. The witness stated that he was engaged in the insurance business, had occasion to use the American tables of mortality, and that he had the standard tables with him. He was asked to refer to them and state the life expectancy of one twenty-four years of age, and over the objection he said it was 39.49 years. The objection is that the proper foundation was not laid for the admission of the testimony, in that it was not shown that the tables referred to were standard or authentic. It was admitted that the witness was in the insurance business and he stated that he had with him standard tables to which he referred and on which he based his answer. Defendant did not ask the witness the name of the tables in his hand, nor otherwise question the authenticity of the work or correctness of his statement. Such testimony only purports to give the average length of life, and courts are en-

titled to take judicial notice of standard tables of life expectancy and may assure themselves by reference to them. (*Railway Co. v. Ryan*, 62 Kan. 682, 64 Pac. 603.) In a later case, *Spencer v. Casualty & Surety Co.*, 116 Kan. 491, 227 Pac. 357, it was said:

"The courts take judicial notice of standard tables of life expectancy [citing cases]. It was not necessary to introduce them in evidence. The court does not see why a judgment should be reversed because witnesses were permitted to testify that according to those tables certain conclusions could be reached." (p. 494.)

The average expectancy of life is only one element for consideration and is necessarily affected by the health and habits of life and other circumstances relating to the life of a person. In this case, besides age, there was some testimony as to plaintiff's physical and social conditions, and from these, with the aid of the expectancy of life shown by the tables, the matter was to be determined. The fact that the mortality tables were not identified and shown to be authentic is not regarded as a material error.

There is a suggestion that no instruction was given to the jury as to mortality tables, but it is a sufficient answer to this suggestion that none was requested. Some other objections are made to rulings on the admission of testimony, but an examination of them indicates that they are not sufficiently material to affect the judgment or to require a discussion. Nor can the refusal of requested instructions touching the subject of assumption of risk and matters relating thereto be held to be error.

An examination of the instructions given upon the subject shows that it was fairly covered, and that the defendant has no good reason to complain of either those given or refused. We find no error in the record, and therefore the judgment is affirmed.

HARVEY, J., dissenting.