No. 30,297.

ERNEST FRITCHMAN, by and through his Next Friend, W. R. FRITCH-MAN, *Appellee*, v. THE CHITWOOD BATTERY COMPANY and L. L. CHITWOOD, *Appellants*.

(8 P. 2d 368.)

Opinion filed
March 5, 1932.

*John Madden* and *John Madden, Jr.*, both of Wichita, for the appellants.

*Earle Wright, E. M. Knight, W. L. Cunningham, D. Arthur Walker, Fred G. Leach* and *Wm. E. Cunningham*, all of Arkansas City, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: Ernest Fritchman brought this action against his employer, the Chitwood Battery Company and L. L. Chitwood, to recover damages for an injury sustained in a factory of the defendant. The action was founded on the alleged negligence of defendants in failing to furnish plaintiff a safe place to work, failing to warn him of certain dangers incident to the work of which plaintiff had no knowledge, or to otherwise protect him from dangers which caused the injury for which damages were sought. There was a recovery in favor of the plaintiff in the amount of $2,000, and the defendants are here complaining of the result and assigning errors occurring at the trial.

Plaintiff, a boy about seventeen years of age, was employed by the defendant, who was engaged in the business of making storage batteries. Plaintiff first served in a factory of defendant at Wellington, where he worked for about six months, and was then transferred to a factory of defendant in Wichita. A great part of his work was in making new batteries out of parts of old discarded ones, which defendant purchased in large numbers from junk dealers. The processes were to pull the boxes or covering away from the lead plates of the old batteries, place the plates in an oven to which heat was applied in order to expel the various acids and prepare the plates for grinding. The dry plates were then put into a large grinder, operated by an electric motor at great speed, thus beating out the oxide and separating the lead from the other materials. This process raised clouds of lead and oxide dust, which settled on the floor, ceiling, walls, tools and equipment. This dust was inhaled and also covered the hands and arms of the workmen. The lead dust was very poisonous in its nature, and it is claimed that plaintiff had no knowledge of its poisonous character. The lead obtained by the process was then placed in a large vat and heated into a molten mass, from which clouds of gas and fumes arose, and there being no proper flues or ventilation for their escape, these were necessarily

breathed and absorbed to some extent by plaintiff and other work-men, especially when the contents of the vat were stirred or ladled. There was no ventilator or flue over the lead vat at Wellington for a part of the time, and in the winter period the doors and windows were closed. The melting lead was poured into forms for new plates which the men handled with bare hands. No masks or gloves or protection were furnished by the defendants, and no warning of the dangerous effect of the dust fumes and gas was given to plaintiff. When the battery plates were molded it became the duty of the workmen to apply lead oxide paste on the plates, which got upon their hands and arms and was of a poisonous nature. Shortly after beginning work at Wellington symptoms on plaintiff, which after-wards turned out to be the effect of lead poisoning, manifested them-selves. At the Wichita factory, to which he was transferred, there were two lead pots for melting lead and but one of these had a flue or ventilator, and there was no fan or force used to drive the dust, gases and fumes through the ventilator. After working a short time at Wichita the plaintiff's condition grew worse and he had cramps which would last from one to four hours, cramps which he' said doubled him up into a knot, and he had sharp pains. He was taken to a hospital where the doctors diagnosed the case as one of lead poisoning, and he was subsequently treated by physicians until he was believed to have recovered from the effects of the poison.

Was plaintiff furnished a safe place to work, and was it the duty of defendant to inform and warn plaintiff of the poison and dangers incident to the work—dangers which plaintiff did not understand or appreciate—or were they such dangers as he should have known and appreciated? The evidence of plaintiff is abundant to show that the factory was an unsafe place to work and that the dust, fumes and gas caused the lead poisoning which disabled plaintiff and sent him to the hospital. It fully appears, too, that no warning of the danger was given by defendant to plaintiff of the danger of poison, if such warning was the duty of the defendant.

It is contended by defendant that the dust, gas and fumes were open and obvious to any person, even one of tender years and little experience; that plaintiff knew of the presence of these elements as well as his employer did; that he was old enough and experienced enough to understand the dangers, as he had stated that the fumes made his eyes smart and that he had a cough. It is insisted that under the circumstances and the evidence the court should have de-

cided as a matter of law that plaintiff had assumed the risk. When employed by defendant the plaintiff was young and had had no experience in such work and with such materials. The evidence shows that lead poisoning is a slow, gradual and insidious process and may be taken into the system by inhalation of the gas and fumes as well as through the mouth and skin. Physicians who examined plaintiff said that the symptoms were marked and easily recognizable as the result of lead poisoning. Plaintiff was unacquainted with chemicals or lead poisoning, and when he mentioned to defendant, a man of ten years' experience in the business, about his illness, defendant told him there was no chance that he was poisoned from the elements in the factory. It is quite clear that under the evidence the court could not determine as a matter of law that plaintiff had assumed the risk of the danger. In *Seeds v. Bridge Co.*, 68 Kan. 522, 75 Pac. 480, it was held that—

"Before it can be said that an employee has assumed the risks of an employment, it must be shown that he knew, or had reasonable opportunity of knowing, what those risks were; that is, he must not only know or have reasonable opportunity of knowing the dangerous conditions, but he must know or have reasonable opportunity of knowing the danger growing out of those conditions." (Syl. ¶ 3.)

In that connection the court stated in effect that knowledge and appreciation of the danger depended upon age, capacity and existing condition, and that whether the employee assumed the risk was a question of fact for the jury, like that of the employer's negligence, and in determining it the jury should take into consideration all of the circumstances and surroundings. (See, also, *Railway Co. v. Bancord*, 66 Kan. 81, 71 Pac. 253; *Tecza v. Sulzberger & Sons Co.*, 92 Kan. 97, 140 Pac. 105; *Wagner Electric Corp. v. Snowden*, 38 F. 2d 599, 601.)

In the case of *Hook v. Railway Company*, 116 Kan. 556, 227 Pac. 531, the pertinent rule was stated in these words:

"In order for the defense of assumed risk to be established, it was not enough that the plaintiff knew of the physical facts as they existed, he must have known and appreciated the danger." (p. 559.)

See, also, *Whetstine v. Atchison, T. & S. F. Rly. Co.*, 134 Kan. 509, 7 P. 2d 501. Whether plaintiff knew and appreciated the danger was at least a question of fact for the jury, and it has found that he did not have such knowledge and appreciation upon sufficient evidence. The finding of the jury on the subject is controlling.

Defendants complain of inquiries made in the examination of two of the jurors as to whether they were connected with an insurance company that had for its purpose the insuring of employees against accidents to employees. · Defendants objected and their counsel then said in the presence of the jurors that defendants had no insurance back of them or of any employees, and further asked that the court admonish the jury to disregard any statement regarding insurance. The court sustained the objection and said: "The jury will not take into consideration any statements regarding insurance companies at all." After the ruling and admonition the court further told the jury that: "This lawsuit is between Mr. Fritchman and the Chitwood Battery Company and L. L. Chitwood only." Later in his testimony Mr. Chitwood, in answer to a question of his counsel, stated that no insurance was carried by defendants. The inquiry was of course improper, but in view of the prompt withdrawal and the admonition of the court, and the remarks made concerning it, it cannot be regarded as resulting in prejudice to defendants. Counsel for defendants conceded that the inquiry of itself can hardly be regarded as a ground of reversal.

Another complaint is that a request made by defendants for the appointment of a medical commission to examine the plaintiff was denied. The application was not made until the jury had been impaneled and the opening statements of counsel had been made. In the midst of a trial the defendant was asking for a commission of medical experts to examine the plaintiff to ascertain whether plaintiff had been suffering from lead poisoning about two years before, and from which he had recovered. The plaintiff had never refused to submit to an examination while he was suffering from the effects of the poison, nor at any other time. The opening statements which had been made revealed that plaintiff had recovered from the poison. The court said that in view of the recovery he did not think such an examination at this time would be of value, and refused to make the appointment. A court has some discretion in respect to such an appointment, and under the circumstances stated the refusal of the application cannot be regarded as an abuse of discretion or as having resulted in prejudice to the defendant. (*Landis v. Street Railways,* 110 Kan. 205, 203 Pac. 1109.)

There is no cause to complain that the special findings are not responsive to the questions asked or to the issues in the case.

There was no error in denying defendant's motion for judgment

on the opening statement of counsel, nor in denying the motion for a new trial, nor do we see any cause to complain of the instructions given to the jury.

Finding no material error in the record, the judgment is affirmed.