No. 33,535

EDITH JERABEK, *Appellee*, v. THE SAFEWAY CAB, TRANSPORT AND STORAGE COMPANY, *Appellant.*

(73 P. 2d 1097)

Opinion filed December 11, 1937.

*J. D. Fair, W. A. Kahrs, Henry Butler, William J. Wertz, Vincent F. Hiebsch* and *Forest V. McCalley,* all of Wichita, for the appellant.

*Clarence R. Sowers,* of Wichita, for the appellee.

The opinion of the court was delivered by

ALLEN, J.: This was an action for personal injuries claimed to have been sustained by the plaintiff while riding as a passenger in a taxicab operated by the defendant in the city of Wichita. The trial resulted in a judgment for the plaintiff, and defendant appeals.

The accident occurred near the intersection of Twenty-first street and Waco avenue. Twenty-first street runs east and west and Waco avenue runs north and south. Plaintiff was riding in a taxicab of the defendant going west on Twenty-first street. As the driver of the taxicab entered the intersection of Waco avenue, the taxicab almost collided with a car approaching the intersection from the west on Twenty-first street. To avoid a collision, the two cars were forced south in the center of Waco avenue, thus forcing the taxicab to drive south on the east or wrong side of Waco avenue. The car coming from the west after turning south on Waco avenue continued to make a right turn and ran into a filling station driveway

on the corner. As the taxicab turned south into Waco avenue, and when the rear end of the taxicab was about even with the south line of Twenty-first street, the driver of the taxicab first noticed a car coming from the south on Waco avenue at a speed of more than twenty-five miles per hour. This car was about seventy-five feet from the taxicab at that time. To avoid collision with this north-bound car, the taxicab driver turned his car to the left and drove his car against the east curb of Waco avenue. The impact threw the plaintiff forward under the cowl dash of the taxicab, causing the injuries for which she asks damages.

The petition charges negligence in the following particulars:

"By failure to perform the duty required of it in exercising the utmost prudence and foresight to avoid injury to the plaintiff prior to and at the time of the collision aforesaid.

"In driving said taxicab in said intersection at a speed greater than was reasonable and proper, having regard for the traffic at said time and place of the collision.

"In failing to observe approaching traffic at time the taxicab entered intersection in time to avoid a collision.

"In driving on the wrong side of the street in front of approaching traffic.

"In failing to observe and have regard for the use of the street and the condition of the traffic prior to the collision."

The case was tried before a jury. The jury returned a general verdict in favor of the plaintiff and returned answers to special questions. The answers returned to the special questions are as follows:

"1. Do you find that the plaintiff's injuries were the result of an unavoidable accident? A. No.

"2. If you find for the plaintiff, state the acts of negligence, if any, of which you find the defendant guilty. A. Cab driver failed to exercise proper precautions prior to entering intersection of streets.

"3. Did the taxicab driver exercise utmost prudence and foresight, under the circumstances, to avoid injury to the plaintiff immediately prior to and at the time the accident occurred? A. No."

Appellant contends that the negligence as found by the jury was not pleaded. The argument is based on the answer to special question No. 2 that "Cab driver failed to exercise proper precautions *prior* to entering intersection of streets."

It was charged in the petition that the defendant failed to exercise "the utmost prudence and foresight to avoid injury to the plaintiff *prior* to and at the time of the collision." It was further charged that defendant was negligent "in failing to observe ap-

proaching traffic at time the taxicab entered intersection in time to avoid a collision."

.We think upon a fair construction the charge of negligence was ample to cover the finding made by the jury.

The most serious objection is that there was no evidence to support the jury's answer to question No. 2. McCleary, the driver of the taxicab, testified that before reaching the intersection of Waco avenue he was traveling fifteen or twenty miles per hour; that as he approached the intersection he was driving approximately in the center of Twenty-first street; that as he entered the intersection he was driving ten miles per hour, intending to turn 'south. The record states: He saw another car coming from the west on the south side of Twenty-first street. It started to make a right turn. At that time it was twenty or thirty feet back of the intersection. As he started to make a left turn, the car coming from the west made a right turn and he had to go to the left-hand of it and pulled over to the left side of the street. He then saw the car coming from the south. He applied his brakes, stopping within five or six feet. The car coming from the west was in the intersection before he was, and that while on Twenty-first street he could have seen any car approaching from the south on Waco avenue for a distance of two or three blocks.

The witness Shupe, who worked at a filling station at the southwest corner of the intersection, and who saw the accident, stated "the cab was running about ten miles per hour when it hit the curb."

The jury heard the testimony of the witnesses, and it was their duty to determine the facts. They were not compelled to believe the testimony of McCleary that he was only driving at ten miles per hour upon entering the intersection. The driver was entering an intersection of a city street. The care required of the driver was reasonable care. While this standard never varies, the care which it is reasonable to require varies with the danger involved at the time and is proportionate thereto. The greater the danger, the greater the care he was required to exercise. As the car from the west had entered the intersection from the west, before the taxicab entered the intersection from the east, and as the taxicab crossed the intersection and was compelled to turn south on the east side of Waco avenue to avoid a collision, the jury might well infer that the taxicab at the time it entered the intersection was traveling at a

rate of speed that was dangerous under the circumstances. We think there was substantial testimony to support the finding of the jury. Where the special findings of the jury are supported by substantial evidence and approved by the trial court they will not be disturbed on appeal. (*Wendt v. Termier,* 129 Kan. 213, 282 P. 2d 588; *Brown v. Byers,* 118 Kan. 503, 235 Pac. 866.)

It is next urged the trial court committed error in the admission of hearsay testimony. The point raised is thus stated in the brief of appellant:

"The plaintiff in this case claimed that in the accident her back was injured. Her medical testimony consisted of testimony of Dr. J. F. Fallot, who testified that he was an X-ray technician and chiropractor, and that his principal business is the curing of ailments of the body through manipulation of the spinal column. He identified plaintiff's exhibit 1 as an X-ray picture of the plaintiff's back. He testified that she had a curvature of the spine, which in his opinion was caused by trauma. He claimed that certain ribs appeared to be dislocated from the spine, although there was not a complete dislocation. This picture was taken October 21, 1936, while the plaintiff was injured on September 11, 1936. He testified that the spine impinging the nerves affected the plaintiff's health and that it would get worse.

"After he had testified, plaintiff produced Dr. G. C. Davis, who is the county coroner. He first saw the plaintiff seven weeks after the accident and had been attending her since. He was unable to tell from the picture whether there was a fracture, but stated that there had been a cord injury, ballooning out of the cord. He testified he was in the courtroom just a short time when the plaintiff was testifying."

It thus appears that the X-ray picture was taken by a qualified X-ray technician, and the same was identified as an X-ray picture of the plaintiff's back. There is no question as to the trustworthiness of the process by which the picture was taken, nor as to the instrument by which it was taken. It is not asserted that the picture examined by Doctor Davis was not the picture identified by Doctor Fallot and admitted in evidence. We think the testimony was properly received. (*Witte v. Hutchins,* 135 Kan. 776, 12 P. 2d 724; *McMillan v. Foncannon,* 128 Kan. 187, 276 P. 2d 820; 2 Wigmore on Evidence, § 795.)

The defendant requested the court to appoint a neutral physician to examine the plaintiff to ascertain the nature and extent of her injuries. It is admitted this was a matter within the sound discretion of the trial court. (*Landis v. Street Railways,* 110 Kan. 205, 203 Pac. 1109; *Fritchman v. Chitwood Battery Co.,* 134 Kan. 727, 8 P. 2d 368.)

The record shows the defendant had five physicians as expert witnesses, and two physicians were called on the part of the plaintiff. The ruling of the court on this point shows no abuse of discretion.

It is urged that the verdict of the jury allowing the plaintiff damages in the sum of $4,676 was excessive. In view of the nature and extent of the injuries sustained by the plaintiff, as shown by substantial, competent testimony, the verdict of the jury, approved by the trial court, must be sustained.

The judgment is affirmed.