ELVIN DODSON, Respondent, v. W. E. MADDOX and I. J. ALBRIGHT, d/b/a W. E. MADDOX OIL COMPANY, Appellants, No. 41196— 223 S. W. (2d) 434.

Division One, September 12, 1949.

Motion for Rehearing or to Transfer to Banc Overruled, October 10, 1949.

*Roy Coyne, Richard K. McPherson, Ralph E. Baird, Arthur C. Popham* and *Sam Mandell* for appellants; *Popham, Thompson, Popham, Mandell & Trusty,* of counsel.

744

*Columbia, Markham & Smith* and *Seiler, Blanchard & Van Fleet* for respondent.

■ DALTON, C.—Action for damages for personal injuries. Verdict and judgment were for plaintiff for $20,000 and defendants have appealed.

On February 25, 1946, defendants' loaded gasoline transport, tractor and trailer, traveling east on Highway 166 in Labette County, Kansas, left the traveled portion of the highway and collided with an embankment on the north side of the road. The driver (Howard) was caught in the cab of the tractor. The trailer tank broke loose from the tractor and turned over on its side spilling gasoline over the highway and under the tractor. In response to the driver's calls for help, plaintiff went to his aid and was trying to release him, when the gasoline took fire. The transport and driver burned and plaintiff received serious injuries.

The petition was in two counts, both based on general negligence under the res ipsa loquitur doctrine. The second count further contained a charge of specific negligence, happening subsequent to the original negligence, as an alleged concurring cause of plaintiff's injuries.

Error is assigned on the court's refusal to direct a verdict for defendants at the close of the case; on the giving of Instruction 1, submitting the cause on the first count under the res ipsa loquitur doctrine; and on an alleged excessive verdict.

After dark, on the evening in question, plaintiff was driving his automobile east on the highway mentioned from Edna, Kansas, to his home 1-½ miles away. The highway was blacktopped, about 20 feet wide, with one foot shoulders. Plaintiff was driving about forty miles per hour when he heard, about a quarter of a mile behind him, what proved to be the transport in question. It was traveling faster than he was and was gaining on him. He saw the lights of the transport as it came over the hill behind him. The transport was then on the south or right hand side of the highway. After plaintiff turned in at his home, a stone's throw north of the highway, he heard a noise of "tires sliding, just like when you turn around," like "they sound when they slide." The lights of the transport turned northeast across the road, the transport went in the ditch on the north or left side of the road, the lights went out and some one began hollering for help. Plaintiff got back in his automobile, so as to have light, and drove west about a quarter of a mile, to a point near the foot of a hill, where there was a ditch on the north side of the road about 3 feet wide and then an embankment about 4 feet high. He found the transport jack-knifed, "crossways there, across the ditch," headed into the bank. He said it "seemed like the brake was on ■ the hind wheels the way it showed there." The trailer had broken loose

from the tractor, the tank had turned over on its side in the road beside the tractor and gasoline was spilling out on the side of the road, "right down where the tractor was setting." No one else was there when plaintiff arrived, except the driver, who was "pinned in the truck," the wheel was mashed in on him and his right leg was caught. He was asking for help and plaintiff undertook to release him.

While plaintiff was working, trying to get the man out, he noticed some electric wires that were broken off. He "pulled them over from the iron." He heard the heater cooling off, like a car or truck that has been driven hard, sounded like a hot motor—just like it was hot and cooling off. The motor was not running. Plaintiff could smell the gasoline and had to wade in it. Several other persons came up. One was working with plaintiff at the cab, when the gasoline caught on fire. It didn't explode, but it spread rapidly and plaintiff's clothes, wet with gasoline, took fire. He tried to get away, but slipped into the ditch and he was badly burned. Two other persons were injured by the fire. A pick-up truck, parked so as to light-up the wreckage, burned with the transport and driver. There was no direct evidence as to how, why or where the gasoline took fire, or as to how soon it happened after plaintiff arrived at the scene, but the driver had not been released from the cab. One Matthews testified: "We went up to the filling station right this side of Edna, and got some hydraulic jacks and brought them down there, and then come back and went on up to the house to get this pole to help pull on this truck to pull the tank and truck away from the man." While they were gone the gasoline took fire.

Plaintiff had passed (only a minute before) the place where the transport went in the ditch. He returned immediately to the scene, but saw no other traffic on the highway, no people or loose horses, or other animals or obstructions on the highway or about it.

Defendants offered no evidence, but stood upon a single motion to direct a verdict for defendants or dismiss as to both counts of plaintiff's petition.

■ Appellants agree that plaintiff's substantive rights are governed by the law of Kansas; and that "generally his procedural rights are governed by the laws of the state of Missouri within certain limitations." Rositzky v. Rositzky, 329 Mo. 662, 46 S. W. (2d) 591, 599; Rashall v. St. Louis, I. M. & S. R. Co., 249 Mo. 509, 516, 155 S. W. 426.

■ Appellants insist that plaintiff's evidence conclusively showed that the transport skidded sideways off the road; that the wreck was caused by skidding; and that "from that fact alone negligence can not be presumed," since skidding may occur without fault. Annin v. Jackson, 340 Mo. 331, 100 S. W. (2d) 872, 876. The contention is based solely upon plaintiff's testimony about hearing tires sliding

748

immediately before the crash. The physical facts which plaintiff saw and described do not show any "skidding sideways into the ditch," but show that the tractor turned across the highway and headed into the ditch and bank. There was no evidence that "skidding was the sole factual cause," so as to exclude the application of the res ipsa loquitur doctrine. Story v. People's Motorbus Co., 327 Mo. 719, 37 S. W. (2d) 898, 900.

Appellant further contends that the plaintiff was "conclusively bound by his judicial admission" in count two of his petition that the fire was caused by the driver's act in jerking a live electric wire loose from the heater. As stated, both counts charged general negligence under the res ipsa loquitur doctrine, but the second count contained an added charge that, while plaintiff was trying to extricate the driver, the driver negligently and without warning jerked loose a live electric wire from the heater and caused a spark igniting the gasoline fumes. Plaintiff offered no evidence in support of this allegation. No issue as to the immediate cause of the fire was submitted, but in conformity with the first count, plaintiff submitted the issue that while he was engaged in attempting to extricate the driver "said gasoline transport and gasoline thereon and around the same caught fire, and . . . plaintiff was ▇▇▇ burned by said fire." Appellants further insist that "plaintiff's evidence showing Howard in extreme peril, coupled with plaintiff's judicial admission of proximate cause, showed no negligence present as a matter of law," since no act of Howard in trying to save himself could constitute negligence. Both of these proposition are argued on the theory that they show plaintiff made no case for the jury under either count. Appellants' theory seems to be that the additional charge of specific negligence mentioned in the second count, although denied by defendants' answer and not proven at the trial, was nevertheless a bar to plaintiff's submission of the cause on the first count under the res ipsa loquitur doctrine. Appellants say "plaintiff offered no proof in support of his judicial admission of proximate cause, and it was grevious error to hold that a submissible case was made, because the burden is always on the plaintiff where specific negligence is pleaded, to come forward with proof supporting his allegation."

We hold that plaintiff had the right to state his claim in two counts, in the manner shown, without being concluded as a matter of law on the first count. The allegation in the second count, as to a subsequent concurring cause, was not such a conclusive judicial admission of an independent, sufficient and intervening proximate cause as to prevent a submission on the first count of the petition. Harvey v. Gardner, No. 41026, 359 Mo. 730, 223 S. W. (2d) 428. Each count of the petition stated a claim upon which relief could be granted.

Appellants further contend that defendants owed no duty to plaintiff and were guilty of no negligence toward him; and that no

case was made under "the rescue doctrine," because there was no proof that defendants were guilty of any negligence toward their truck driver, who was in peril when plaintiff volunteered to help him. We agree that no case was made under "the rescue doctrine." For a statement of that doctrine, see Carney v. Chicago, R. I. & P. R. Co., 323 Mo. 470, 23 S. W. (2d) 993, 996; Donahoe v. Wabash, St. L. & Pac. R. Co., 83 Mo. 560, 563; 38 Am. Jur. 739, Negligence, Sec. 80; 45 C. J. 841, Negligence, Sec. 254; Annotation 9 A. L. R. 4. No negligence of defendants with respect to their driver was shown under the res ipsa loquitur doctrine, because that doctrine was not applicable as between defendants and the driver. The evidence did not reasonably exclude some act of the driver himself as a contributing cause of his peril. Charlton v. Lovelace, 351 Mo. 364, 173 S. W. (2d) 13, 18; Gibbs v. General Motors Corp., 350 Mo. 431, 166 S. W. (2d) 575, 581.

Defendants, however, did owe a duty directly to plaintiff, a duty to exercise ordinary care to avoid injuring him, and that duty existed prior to the time the transport left the highway and collided with the embankment. Plaintiff was in the immediate vicinity when the transport struck the embankment. He saw and heard what took place, was attracted thereby and responded to the driver's calls for help and he was injured by the fire which broke out in the wreckage. It was admitted that, on the occasion in question, the truck driver (Howard) was driving and operating the gasoline transport as the agent and servant of the defendants. The evidence shows that the transport was loaded with gasoline and was being operated on a public highway in Kansas. We judicially know that gasoline is an inflammable liquid. Under the law of Kansas it was the duty of defendants to exercise ordinary care under the circumstances in the operation of their motor vehicle. Leinbach v. Pickwick Greyhound Lines, 135 Kans. 40, 55, 10 Pac. (2d) 33; Hall Motor Freight v. Montgomery, 357 Mo. 1188, 212 S. W. (2d) 748, 753; Kansas G. S. 8-531, 1947 Supp. "The standard of conduct imposed by the statute is that of a reasonable man under like circumstances." State v. Davidson, 152 Kans. 460, 105 Pac. (2d) 876, 878. "While this standard never varies, the care which it is reasonable to require varies with the danger involved at the time and is proportionate thereto. The greater the danger, the greater the care he was required to exercise." Jerabek v. The Safeway Cab T. & S. Co., 146 Kans. 859, 861, 73 Pac. (2d) 1097.

Whether plaintiff has proven the charge of negligence in the first count must be determined by the law of this state, where proof of negligence may be made under the res ipsa loquitur doctrine. Respondent concedes that the Supreme Court of Kansas has never applied the res ipsa loquitur doctrine to the operation of a motor vehicle, but that the court has held, as has this court, that the res ipsa loquitur doctrine concerns "a rule of evidence and not of substantive

law.'' Sipe v. Helgerson, 159 Kans. 290, 291, 153 Pac. (2d) 934; Belding v. St. Louis Public Service Co., 358 Mo. 491, 215 S. W. (2d) 506, 510. Appellants, however, contend that the doctrine should not be applied in this case because our statutory law requires the highest degree of care in the operation of a motor vehicle, while Kansas requires only ordinary care commensurate with the circumstances. Appellants say that Kansas has thus narrowed the degree of care, below that applied in Missouri, so that the doctrine should not be applied. Sec. 595, Restatement Conflict of Laws. The doctrine was properly applied. This court has not limited its application to those cases where the highest degree of care is required, but has applied it in many cases where the duty is limited to ordinary care. Maxie v. Gulf, M. & O. R. Co., 356 Mo. 633, 202 S. W. (2d) 904, 910 and 219 S. W. (2d) 322; Cruce v. Gulf, M. & O. R. Co., 358 Mo. 589, 216 S. W. (2d) 78; Kelly v. Laclede Real Estate & Inv. Co., 348 Mo. 407, 155 S. W. (2d) 90, 95.

Appellants further contend that respondent was not entitled to rely upon the res ipsa loquitur doctrine because there was evidence of specific negligence, towit, ''that the brakes were on the hind wheels of the transport.'' There is no merit in this contention since the evidence did not show the specific cause of the transport leaving the highway and colliding with the embankment. Belding v. St. Louis Public Service Co., supra. On the record presented the evidence was entirely sufficient to show negligence under the res ipsa loquitur doctrine in the management and control of defendants' transport. Harke v. Haas, 335 Mo. 1104, 75 S. W. (2d) 1101; Tabler v. Perry, 337 Mo. 154, 85 S. W. (2d) 471; Holmes v. McNeil, 356 Mo. 846, 204 S. W. (2d) 303.

Appellants further contend there was no proof of the cause of the fire and ''no evidence of defendants' negligence in such causation,'' but only a showing that plaintiff's injuries were caused by the fire which later occurred, and which was a separate, intervening and proximate cause of his injuries. Appellants insist that without the fire plaintiff would not have been burned; that ''defendants' negligence, if any, . . . had come to rest a considerable time prior to fire''; and that it was ''incumbent upon plaintiff to come forward with proof that the fire was occasioned by some negligence of defendants . . ., and the mere fact that a fire did occur is not proof of negligence.''

Respondent does not rely upon the res ipsa loquitur doctrine in connection with the ignition of the gasoline and the resultant fire, but does rely ''upon the res ipsa loquitur doctrine to establish the antecedent negligence creating the peril'' and without which negligence the fire would not have occurred. Respondent says the negligence which created the perilous situation was the proximate cause of the fire and plaintiff's injuries. In this connection, plaintiff alleged

that, while he was engaged in the attempted rescue and "without any fault or negligence on plaintiff's part, the gasoline and fumes thereof, coming from the tank of defendants' transport, were caused to become ignited." He testified to facts from which the inference could be drawn that the gasoline fumes were ignited from matters inherent in the wrecked transport, heated iron and steel and the electric wires which were broken and hanging loose. We shall consider this assignment of error (that there was no evidence that appellants' negligence caused the fire) in connection with appellants' further assignment that "whatever negligence was present was not the proximate cause of plaintiff's injuries."

"The rule is well established, even if negligence of the defendant has been shown, there can be no recovery unless such negligence is the proximate cause of the injury. It is not sufficient merely to show negligence and injury; plaintiff must show a causal connection between the negligence pleaded and proved, and the injury claimed to have resulted therefrom." Fassi v. Schuler, 349 Mo. 160, 159 S. W. (2d) 774, 776; Annin v. Jackson, supra, 100 S. W. (2d) 872, 876.

We think the evidence was sufficient to show that the fire and plaintiff's injuries resulting therefrom were directly and proximately caused by defendants' negligence. It might reasonably have been foreseen that defendants' negligence resulting in the wreckage of a loaded gasoline transport upon the public highway and the spilling of gasoline, a highly inflammable substance, over the highway and under and about the wreckage would reasonably and probably result in the gasoline and fumes therefrom being ignited. The danger of fire and injury to persons on and about the highway was inherent in the dangerous situation created by causing and permitting the transport to leave the highway and collide with the embankment. The lapse of time shown by the evidence between the collision with the embankment and the subsequent fire and injury was insufficient as a matter of law to show that defendants' negligence had come to rest. The driver was still caught in the wreckage, the efforts to release him were still in progress and gasoline was still spilling on the highway. The negligence of defendants, as evidenced by the unusual movements of the transport, set in motion a direct chain of events which directly and without interruption resulted in the injury to plaintiff. McCloskey v. Salveter & Stewart Inv. Co., 317 Mo. 1156, 298 S. W. 226, 235; Northern v. Chesapeake & Gulf Fisheries, 320 Mo. 1011, 8 S. W. (2d) 982, 990. The wreck of the transport, the spilling of gasoline, the imprisonment of the driver, his calls for help, plaintiff's response thereto, the fire and plaintiff's injuries were but the natural and probable result of defendants' breach of duty in the management and control of its transport on the highway. The fire and plaintiff's injuries were, therefore, not remote or unrelated to the original negligence producing the wreck, because the contact of gasoline fumes

with a spark, or some heated piece of steel or iron in the wreckage, a resulting fire and some injury to persons and property were to be anticipated as the natural and probable result of the negligence shown. Clark v. Powder Co., 94 Kans. 268, 272, 146 Pac. 320; Pinson v. Young, 100 Kans. 452, 164 Pac. 1102; Newton v. Texas Co., 180 N. C. 561, 105 S. E. 433; 22 Am. Jur. 147, Explosions and Explosives, Sec. 22; 38 Am. Jur. 700, Negligence, Sec. 53 et seq.

"Causal connection is usually a jury question, and, if it can reasonably be anticipated that setting a certain force in motion would injure some one (that is, if injury would be a reasonable and probable consequence), it makes no difference that the manner in which it did injure some one might not have been foreseen or anticipated." Mrazek v. Terminal R. Ass'n., 341 Mo. 1054, 111 S. W. (2d) 26, 29; Rowell v. City of Wichita, 162 Kans. 294, 176 Pac. (2d) 590, 595; Restatement of the Law of Torts, Sec. 435.

In Butler v. Jersey Coast News Co., 109 N. J. L. 255, 160 Atl. 659 (not a rescue case), plaintiff's automobile and defendant's truck were moving in the same direction on the same highway with plaintiff ahead, when defendant's driver undertook to and did pass plaintiff at a negligent speed. The truck skidded across the icy pavement, left the highway and hit an electric light pole, breaking it off and causing a wire to sag across the highway. The truck came to rest with the driver under it and plaintiff left his automobile and, while running to the aid of the truck driver, came in contact with the electric wire and was burned. It was held that defendant's negligence created a dangerous situation endangering the users of the highway; and that plaintiff's injuries were proximately caused by defendant's negligence. Recovery was allowed on the theory that the negligence causing the truck to leave the highway created the liability.

Whether the defendants' negligence directly and proximately caused the fire and plaintiff's injuries, as charged in the first count of the petition and as submitted by Instruction 1, was a question for the ■■■ jury. Myers v. Kennedy (En Banc), 306 Mo. 268, 267 S. W. 810; Vaughn v. Meier (Mo. Sup.), 246 S. W. 279; Butler v. Jersey Coast News Co., supra; Carney v. Buryea, 271 App. Div. 338, 65 N. Y. S. (2d) 902; Burch v. Bigelow, 310 Mich. 74, 16 N. W. (2d) 668. The motion for a directed verdict on both counts was properly denied.

■ Appellants' objections to Instruction 1, submitting the cause under the res ipsa loquitur doctrine, have been disposed of. The objections are that the instruction was erroneous because (1) the specific negligence of defendants causing the collision was shown by the evidence; (2) the res ipsa loquitur doctrine was not properly applicable, since the rule of ordinary care applies in Kansas; (3) there was no evidence that defendants' negligence caused the fire; and (4) whatever

negligence was present was not the proximate cause of plaintiff's injuries.

Was the verdict excessive? Plaintiff was burned so that approximately 40% of his body was involved. He suffered third and fourth degree burns on his hands and legs. There was a complete loss of skin and a charring of the muscles on the right leg and the destruction of skin and underlying structures on the left leg. His injuries were very painful and so was the treatment. He was in the hospital four and a half months for treatment and skin grafts and then after four weeks returned to the hospital for an additional nine weeks. Later he was in the hospital for five weeks and still later for a shorter period. He used crutches for five months and later a cane. He was 39 years of age, had a grade school education and was in good health, with no prior disability of any kind. His earning had averaged $48 per week. He was injured February 25, 1946, and had not been able to do any work prior to the trial (May 26, 1948). His permanent partial disability at the time of the trial amounted to 25%, based on common labor of the kind he had been doing. The reasonable value of medical and hospital services, which had been required to the date of the trial, amounted to $2779.55, and he still had sores over his shin bone and on his ankle. There were two or three raw areas that had not healed because the burns were so deep that circulation had been impaired. Treatment was still required and will be until all ulcerations have healed. Other skin grafts may be required. How long treatment will be required depends upon the circulation of blood in the right leg to facilitate the healing of the raw sores. Scar tissue in the region of the right knee prevents that leg from being straightened, there is a "limitation of extension." He has also developed excess scar tissue, keloid scar formations, about his back and abdomen from which the skin grafts were taken.

Appellants insist that the amount of the verdict is so far excessive as to clearly indicate passion and prejudice; and that it should not be permitted to stand. The only case cited is Goslin v. Kurn, 351 Mo. 395, 173 S. W. (2d) 79, 89, where a $15,000 verdict was reduced to $12,500. In that case plaintiff, a 56 year old switchman, earning $190 per month, was injured December 20, 1940. He suffered a transverse fracture of his left upper femur, permanently disabling him from further functioning as a switchman and resulting in nine weeks hospitalization, two months in bed at home and a $319 doctor bill. The injuries and damage shown there were not comparable to the injuries and damage in this case. Considering the evidence of plaintiff's injuries in a most favorable light to him, his age, the pain and suffering endured, the loss of wages in the past and the probable loss of earnings in the future, the cost of medical and hospital services, the changing economic conditions and the decline in the purchasing

power of the dollar, we do not think the award excessive, nor sufficient to show passion and prejudice. See Milburn·v. Chicago, M. & St. P. R. Co., 331 Mo. 1171, 56 S. W. (2d) 80, 92; 25 C. J. S. 984, Sec. 198,n. The trial court did not abuse its discretion in permitting the verdict to stand.

Respondent's motion to dismiss the appeal, which motion was taken with the case, is overruled. The judgment is affirmed. ▆▆▆ *Bradley* and *Van Osdol, CC.,* concur.

PER CURIAM:—The foregoing opinion by DALTON, C., is adopted as the opinion of the court. All the judges concur.