NANCY E. NEWTON v. THE TEXAS COMPANY.

(Filed 8 December, 1920.)

1. **Explosives—Gasoline—Negligence—Evidence—Municipal Corporations —Cities and Towns—Ordinances.**

   Where the defendant negligently permitted the conditions at its storage warehouse for gasoline to remain, and without a watchman, so as to menace adjoining or adjacent lands and houses from ignition of the gasoline vapor, and there is evidence that the plaintiff's house was set afire in consequence, testimony offered by the defendant that after the explosion it had received an anonymous postcard, whereon were the words, "New Year's Eve, then the explosion," is heresay and incompetent, and not a part of the *res gestae.*

2. **Instructions—Evidence—Opinion—Courts—Contentions.**

   A requested instruction which attempts to pass upon the evidence, or withdraws a material portion of the relevant evidence from the jury, is properly refused.

3. **Same—Admissions.**

   Where there is evidence that plaintiff's house was negligently injured by an explosion of gasoline stored in the defendant's warehouse, and caused by defendant's negligence, it is not error for the trial judge to speak of the explosion as an admitted fact, when it has been admitted.

4. **Instructions—Issues—Correlating Evidence.**

   It is not an expression of opinion by the trial judge to narrate the related evidence in stating the contentions of the parties in his instructions to the jury, and to explain to the jury the relevancy of the evidence to the issues submitted. Rev., 535.

5. **Negligence—Explosives—Gasoline—Evidence—Nonsuit.**

   Evidence that the defendant maintained a distributing plant containing large quantities of gasoline in tanks for its customers in a city at a street corner, without a watchman, and in violation of an ordinance, and that railroad tracks were located on one of these streets on which locomotives or trains passed frequently, and that a stream of gasoline was seen flowing from the defendant's warehouse under the railroad track shortly before the passing of one of these trains, is sufficient as furnishing a reasonable inference that either the explosion, causing damage to the plaintiff's adjacent or adjoining house, was at that time caused by fire from the locomotives, or the carelessness of passersby in the use of matches in lighting cigars or cigarettes, or otherwise; and a motion for judgment of nonsuit thereon is properly denied.

36—180

**6. Same—Proximate Cause—Intervening Acts.**

Where the defendant has been negligent in maintaining a plant for the storage of gasoline for its customers in a city, under such circumstances as to sustain a verdict in the plaintiff's favor, the reasonable inference therein that the ignition of the gasoline was caused either by fire from passing locomotives, or by the carelessness of passersby in the use of fire, does not affect the continuing negligence of the defendant which produces the result, nor is the negligence of such persons attributable to the plaintiff, nor does it relieve the defendant of liability as an independent or intervening cause. If defendant's negligence concurred with that of another in causing the injury, defendant is liable.

**7. Negligence—Municipal Ordinances—Explosives—Gasoline.**

While the municipal authorities may pass a valid ordinance for the protection of its property owners from fire, it does not protect a defendant in a civil action for damages from the effect of its violation in building and operating its plant, and the granting of a license, under the ordinance, for the maintenance of a large storage and distributing plant for the sale of gasoline, will not avoid liability on the part of the defendant violating the ordinance itself.

**8. Negligence—Explosives—Evidence—Res Ipsa Loquitur—Gasoline.**

The doctrine of *res ipsa loquitur* applies where the evidence tends to show that the defendant's storage plant for gasoline, in large quantities, was under the care and control of the defendant, and that under circumstances tending to show its negligence, an explosion occurred therein to the damage of the plaintiff's property, which, under ordinary circumstances, would not have happened.

APPEAL by defendant from *Shaw, J.,* at April Term, 1920, of GUILFORD.

The plaintiff sued to recover damages for injuries sustained from an explosion on defendant's premises, in the city of Greensboro, on 3 May, 1919, it being the same explosion described in *Stone v. The Texas Co.,* decided at this term. Nearly all of the questions now raised were passed upon in that case, the only practical difference between the two cases being that there was evidence in this case that defendant had applied for and obtained a license to conduct business at its plant in the city.

The jury rendered a verdict for the plaintiff, assessing her damages at $3,000. Judgment thereon, and defendant appealed.

*John A. Barringer and Wilson & Frazier for plaintiff.*

*Guy Stevens, Roberson & Dalton, and Brooks, Sapp & Kelly for defendant.*

WALKER, J., after stating the case: We will consider the assignments of error in the order of their statement in the record.

The first and third assignments, to the refusal of a nonsuit, are over-ruled, as there was sufficient evidence for the jury to consider as to defendant's negligence. Assignment No. 2 is untenable, as the postcard received the day after the explosion, containing the words, "New Year's eve, then the explosion," was incompetent, hearsay, and irrelevant, and no part of the *res gestae*. The judge properly excluded it. The court gave the instruction set forth in the fourth assignment, so far as it was proper that it should be given. There was evidence for the jury to consider that the ordinance of the city had been violated. But the plaintiff has more reason for an objection to the charge in this respect than has the defendant, as it was less favorable to her than it should have been.

The court substantially gave the instruction set forth in the fifth assignment of error. The court could not have given the instruction in the sixth and seventh assignments of error without passing upon the evidence, and usurping the function of the jury, and, in one respect, without withdrawing a material portion of the relevant evidence from the jury. The eighth assignment is substantially the same as the two in regard to the motion for a nonsuit, and must share their fate.

The first and second exceptions to the instructions, as set forth in assignments nine and ten, were properly overruled. The explosion was an admitted fact, and should have been considered along with the other evidence. The plaintiff could not have made a beginning in the develop-ment of her case without this fact being considered. The court was only reciting the facts and circumstances, which were competent to be considered by the jury on the question of negligence. In other words, he was concatenating such facts, and not confining the jury to any one fact. He had a perfect right to tell the jury what evidence was relevant to the issues, if he did not give an opinion, as to whether the facts were fully or sufficiently proven, or intimate his opinion upon the weight of the evidence, but he is required "to state in a plain and correct manner the evidence in the case, and declare and explain the law arising there-on." Rev., 535. It is not an expression of opinion merely to array the testimony in the case in a proper manner, and to instruct the jury as to what is and what is not evidence.

If the defendant, by its negligence, produced a situation or condition of danger by allowing gasoline to escape from its warehouse and run down a street, where it would probably come in contact with fire, sparks from a passing engine or live ashes from a lighted cigar or cigarette dropped by a passerby, and the explosion was caused thereby, we do not see why this would not be negligence as much so as the act of a railroad company in permitting a spark to escape from a defective smokestack and fall on adjoining property, thereby injuring or destroying it. If

the negligence of the defendant, combined with the act of some other person, and proximately injured the plaintiff, the defendant would be liable, though he had no connection with the conduct of the third party, and no control over him. This was held to be the law in *Grand Trunk Rwy. Co. v. Cummings,* 106 U. S., 700 (27 L. Ed., 266), and 1 Shearman & Redf. on Neg. (6 ed., by Street), sec. 39, where it is said to be universally agreed that if the damage is caused by the concurring force of the defendant's negligence and some other cause, for which he is not responsible, including the "act of God" or superior human force directly intervening, the defendant is nevertheless responsible, if his negligence is one of the proximate causes of the damage, within the definition already given. It is also agreed that if the negligence of the defendant concurs with the other cause of the injury, in point of time and place, or otherwise so directly contributes to the plaintiff's damage that it is reasonably certain that the other cause alone would not have sufficed to produce it, the defendant is liable, notwithstanding he may not have anticipated or been bound to anticipate the interference of the superior force, which, concurring with his own negligence, produced the damage. 1 Sh. & Redf. on Neg., sec. 39. The defendant's vessel, owing to his negligence, struck, and was driven by the wind and tide, upon a sea-wall, damaging the same. In that state of the weather and tide, it was impossible to prevent this result, after the ship had once struck: *Held,* that defendants were liable for the damage caused to the wall. *Romney v. Trinity House,* L. R. 5 Ex., 204; affirmed 7 Id., 247. An action lies by a passenger against a carrier if the injury occurred ·in part from an unforeseen cause, and in part by negligence (*Brehm v. Great Western R. Co.,* 34 Barb., 256). The defendant had wrongfully placed a dam across a stream on plaintiff's land, and allowed it to remain there; being swept away by a freshet, the rush of water injured plaintiff's property; defendant held liable. *Dickinson v. Boyle,* 17 Pick., 78. See also notes to Sh. & Redf. on Negligence, sec. 39, and cases cited therein. In *Grand Trunk Rwy. Co. v. Cummings, supra, Chief Justice Waite* said: "If the negligence of the company contributed to it, it must necessarily have been an immediate cause of the accident, and it is no defense that another was likewise guilty of wrong." The same doctrine is fully discussed in *Ridge v. R. R.,* 167 N. C., 510, where we said: "The inquiry must, therefore, always be whether there was any intermediate cause disconnected from the primary fault, and self-operating, which produced the injury. In this case there was no intermediate, or intervening, independent and efficient cause, which, operating alone, was sufficient of itself to break the connection between defendant's negligence and the injury, and the primary wrong must be considered as reaching from the beginning to the effect, and, therefore, as proximate to it,"

citing *Kellogg v. Railroad Co.,* 94 U. S., 469, 475; *Insurance Co. v. Boon,* 95 U. S., 619; *Steele v. Grant,* 166 N. C., 635; *Hardy v. Lumber Co.,* 160 N. C., at pp. 124, 125; *Wade v. Contracting Co.,* 149 N. C., 177. The rule has been stated by us as follows: "Where there are two causes coöperating to produce an injury, one of which is attributable to defendant's negligence, the latter becomes liable, if together they are the proximate cause of the injury, or if defendant's negligence is such proximate cause." *Ridge v. R. R., supra; Steele v. Grant, supra.*

Assignments twelve, thirteen, fourteen, and fifteen, relating to the ordinances, cannot be sustained. The court properly construed the ordinances, and the instruction attacked in the fifteenth assignment was more favorable to the defendant than it should have been, as the violation of a statute, or an ordinance, is negligence *per se,* or rather, to speak more accurately, it is itself a distinct wrong in law, and all that is needed to make it an actionable wrong is the essential element of proximate cause, for "wrong and damage" constitute a good cause of action if there be a causal connection between them. That the violation of a statute, or ordinance of a city or town, is negligence *per se,* or a distinct wrong in law, is the rule established by the more recent cases. *Leathers v. Tobacco Co.,* 144 N. C., 330; *Starnes v. Mfg. Co.,* 147 N. C., 556; *Ledbetter v. English,* 166 N. C., 130; *McNeill v. R. R.,* 167 N. C., 390; *Ridge v. High Point,* 176 N. C., 424. We so held in *Stone v. Texas Co.,* at this term.

The maxim *res ipsa loquitur* was considered in *Stone's case, supra,* but was not applied strictly by the judge in his charge to the jury. The defendant is contending in these cases that, while it had employed no watchman to guard its premises (which we say was the prudent course to have adopted), it had carried on its business for many years, and up to the time of the explosion, in practically the same way, using care to prevent the escape of gasoline and kerosene, and no accident had occurred. Does not this very contention make the rule, *res ipsa loquitur* apply here? If care had heretofore prevented injury, the jury might well infer that the continued use of care would likewise have done so, and that what did occur was due to its absence. But with a plant equipped with proper appliances for safety, gasoline should not have escaped, with the use of ordinary care, as it could get out of its container only through some opening. So that defendant is reduced to this dilemma, either it did not have proper safety appliances to prevent the escape of gasoline, or, if it did have them, they were not kept in proper condition, or some one of its employees negligently (or thoughtlessly, which is the same thing) left them open. If the spigots were closed, the contents of the drum, or tank, or whatever else was used for storing the gasoline, could not get out unless the containers themselves were defec-

tive, which the defendant will be slow to admit. We do not say that these are the true or necessary inferences from the evidence, but that the jury were at liberty to draw them, and well warranted in doing so, not alone, perhaps, from the accident itself, from it and all the attendant circumstances. We do not perceive, though, how the defendant could have expected, or how it could have had a well-founded hope that the jury would find otherwise than they did.

The license would not protect the defendant against the violation of the ordinance itself, treating Nos. 12 and 13 as one enactment, as the board issuing it was not clothed with authority to license its violation. The defendant did not construct its plant as provided in the ordinance, and it committed acts expressly prohibited by it. Whether its acts of omission or commission were the proximate cause of the injury to the plaintiff was a question for the jury, which has been decided against the defendant, under evidence from which such a conclusion could ligitimately be deduced. There was the gasoline (identified by the witnesses by its peculiar odor) flowing from the plant, or warehouse, down the street to and under the railroad, with several tracks and many engines passing and repassing directly over it, and one train passing just before the explosion, so close to the time when it occurred that the glass was shattered in the car windows. This exposed the highly volatile vapors, which were generated by contact with the air, to the very thing needed for the terrific explosion which followed. It was not necessary that any one should have seen sparks from the engine actually fall upon this stream of gasoline, as we have so often held in the cases where railroads have been held liable for causing fires in precisely the same way. *Deppe v. R. R.,* 152 N. C., 79; *Simmons v. Lumber Co.,* 174 N. C., 225, and other cases cited in *Stone v. Texas Co.,* at this term. We said in the *Simmons case, supra:* "The cause of the fire is not required to be shown by direct and positive proof, or by the testimony of an eye-witness. It may, as we have seen, be inferred from circumstances, and there are many facts like this one which cannot be established in any other way. It is true that there must be a causal connection between the fire and its supposed origin, but this may be shown by reasonable inference from the admitted, known, or proven facts." But a case more directly to the point is *Watson v. Ky. & Ind. Bridge & Rwy. Co.,* 127 S. W., 146: "If the presence on Madison Street in the city of Louisville of the great volume of loose gas, that arose from the escaping gasoline, was caused by the negligence of the appellee, bridge and railroad company, it seems to us that the probable consequence of its coming in contact with fire and causing an explosion was too plain a proposition to admit of doubt. Indeed, it was most probable that some one would strike a match to light a cigar, or for other purposes, in the midst of the gas. In our

opinion, therefore, the act of one lighting or throwing a match under such circumstances cannot be considered to be the efficient cause of the explosion. It did not of itself produce the explosion, nor could it have done so without the assistance and contribution resulting from a primary negligence, if there was such negligence on the part of the appellee, bridge and railroad company, in furnishing the presence of the gas in the street."

The most reasonable and probable solution of this case is that one of the defendant's employees, who was there the evening before the explosion occurred, carelessly left an opening in one of the tanks, or containers, from which the gasoline flowed from its warehouse into the street. There was circumstantial evidence to warrant such a conclusion. Defendant had possession, control, and management of its plant, and should have superior knowledge as to its condition to any one else. It has not given any satisfactory explanation of how the gasoline got into the street, and the plaintiff was left, as her last resort, to circumstantial evidence for the purpose of showing that the cause of it was attributable to the defendant. In numerous cases we have held that when a thing which causes injury is shown to be under the management of the defendant, and the accident is such as in the ordinary course of things does not happen, if those who have the management use the proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from a want of care. Defendant replies to this that the thing which caused the injury was not under its management, but is that the fact, as the gasoline, which caused the explosion in conjunction with the fire, regardless of the source from which the latter came, was under its control and management, and it would have remained harmless if it had been properly stored, or watched and controlled. The defendant cannot, upon the evidence in the case, escape the full operation of this principle. *Stewart v. Carpet Co.,* 138 N. C., 66; *Womble v. Grocery Co.,* 135 N. C., 474; *Fitzgerald v. R. R.,* 141 N. C., 530; *Ross v. Cotton Mills,* 140 N. C., 115, and especially *Dail v. Taylor,* 151 N. C., 284, and *Cashwell v. Bottling Works,* 174 N. C., 324. "It has sometimes been held not sufficient for the plaintiff to establish a probability of the defendant's default, but this is going too far. If the facts proved render it probable that the defendant violated its duty, it is for the jury to decide it did so or not. To hold otherwise would be to deny the value of circumstantial evidence." Shearman & Redf. on Negligence, sec. 58; *Cashwell v. Bottling Works, supra.* "Direct evidence of negligence is not required, but the same may be inferred from acts and attendant circumstances; and if the facts proved establish the more reasonable probability that the defendant has been guilty of action-

able negligence, the case cannot be withdrawn from the jury, though the possibility of accident may arise on the evidence." *Fitzgerald v. R. R., supra.*

The case was correctly tried under the guidance of the able and learned judge who presided at the hearing.

No error.