LOUISE PHILLIPPI *v.* FARMERS MUTUAL TELEPHONE COMPANY, A *Corporation*

(No. 7512)

Submitted March 1, 1933.   Decided March 21, 1933.

*Martin Brown,* for plaintiff in error.
*Lloyd Arnold,* for defendant in error.

MAXWELL, PRESIDENT:

This is an action for damages for personal injury. Upon the conclusion of introduction of evidence, the court directed

the jury to find for the plaintiff, leaving to the jury only the question of quantum of damages. A verdict for $3,500.00 resulted. A writ of error was awarded the defendant.

According to plaintiff's evidence, she, her father, mother, two brothers and a cousin, were being driven by her uncle in his automobile from Glen Easton in Marshall County over the Glen Easton Hill Road to her home on Fork Ridge about dusk, August 5, 1930, when the automobile overturned, seriously injuring her. The adult occupants of the car, except the driver who lives in another state, testifying for the plaintiff, stated that the car was proceeding at a moderate rate of speed when, without warning, a telephone pole with wires attached fell from a bank on the left side of the road, striking the front part of the top and the windshield of the car; and that as a consequence the driver lost control of the machine which ran over an embankment to the right of the road.

Plaintiff, then about twenty years of age, received a serious scalp wound and a fracture of the jaw bone. She was taken immediately to a hospital where she remained unconscious for four days. Two or three of her teeth were broken off. Her condition, however, improved sufficiently to enable her to enter upon the performance of her duties as a teacher when her school began early in September and she taught two terms of school thereafter. She now complains of rheumatism and dizziness. At the time of the trial of the case she was a student in one of the state normal schools.

The section of the pole which fell was about twelve feet long and nine inches in diameter at its base, tapering to four inches at the smaller end. An oak cross-arm about six feet long and three by four inches in thickness was attached near the smaller end to support the telephone wires when the pole was in place. The pole had stood in the slope of the embankment on plaintiff's left (west) side of the road, about two or three feet above the bottom of a ditch at the foot of the slope, for eight or nine years.

It is the contention of plaintiff that the pole was so badly decayed where it entered the ground that it fell of its own weight.

The automobile was a Ford touring car equipped with an ordinary cloth top supported by a wooden frame.

Evidence was adduced by defendant as follows to establish that the pole could not and did not fall of its own weight: The heart of the pole, about four and one-half inches in diameter, was sound. A witness for defendant, a lineman, stated that he climbed the pole about three months before the accident to repair the wires; that he weighed 140 pounds and carried repair tools while working weighing 25 pounds; and that there was no indication that the pole was unsound. Upon examination of the pole soon after the accident, witnesses observed that the heart of the pole had "splintered" where it broke, and they testified that this negatived any idea of decay.

There is evidence that tracks, said by witnesses for defendant to have been made by the car in which plaintiff was riding, were found in the ditch to the left of the road indicating that the car had passed in close proximity to the pole. This evidence was offered by defendant in an effort to show that the automobile may have struck the pole, and, in so doing, caused the wreck.

Widely divergent views as to the cause of the accident are presented by the evidence. Did the pole fall of its own weight owing to a high state of decay? If not, did the left wheels of the car drop into the ditch at the edge of the road thus causing the car to lean sharply to the left and bring the top into contact with the pole? Or, did the driver simply lose control of the car which ran into the ditch, followed it a short distance, and then plunged over the embankment on the opposite side of the road—never having come in contact with the pole? There is evidence that Mrs. Phillippi, plaintiff's mother, stated to one of defendant's witnesses, following the accident, that she saw the pole (whether it had then fallen is not clear) but that Grim, the driver of the car, could neither see nor hear well, "you had to holler at him to make him hear, and they were all afraid to say anything to him." Another of defendant's witnesses stated that Mr. Phillippi, plaintiff's father, told him that the pole was lying in the road and their car collided with it there. Both Mr. and Mrs. Phillippi deny that they made such statements.

We are impressed that these are clearly jury matters and that the trial court should have permitted the jury to pass

upon them. Certainly, reasonable minds might differ as to the cause of the accident, as there is a mass of conflicting testimony. Whether the accident herein considered was such as might have been anticipated by defendant, was, we believe, a question for the jury. There is sharp controversy as to the facts and the inferences fairly to be drawn from them. We are unable to say from the facts and circumstances given in evidence by plaintiff's witnesses when considered with facts and circumstances appearing from defendant's evidence, that defendant was bound to anticipate injury to any one from the condition and position of the pole. The pole may have fallen because of negligence of the defendant, or some agency for which the defendant was not responsible may have caused it to fall. The doctrine of *res ipsa loquitur* therefore does not afford basis for the direction of a verdict against the defendant. The doctrine does not apply where an "unexplained accident may have been the result of causes over which defendant had no control." *Laurent* v. *Gas Co.,* 101 W. Va. 499, 133 S. E. 116.

The court should not direct a verdict where a case depends on conflicting evidence and credibility of witnesses. *Brown* v. *Woody,* 98 W. Va. 512, 127 S. E. 325. If there is appreciable evidence sustaining the defense, it is error to take the case from the jury and instruct for the plaintiff. *Coal Co.* v. *Hawley,* 102 W. Va. 205, 135 S. E. 7.

Therefore, being of the opinion that the case should have been submitted to the jury on the question of liability of the defendant, as well as upon the quantum of damages, we reverse the judgment, set aside the verdict, and remand the case for a new trial.

*Reversed; verdict set aside; new trial awarded.*