Hollis Mullins

*v.*

J. C. Baker, *et al.*

(No. 10933)

Submitted September 9, 1958. Decided February 17, 1959.

*R. A. Clapperton,* for plaintiffs in error.

*Wolverton & Callaghan, Barber & Dunn,* for defendant in error.

BERRY, JUDGE:

This is an action of trespass on the case instituted by Hollis Mullins, against J. C. Baker, John Paul Baker and George Baker, doing business as J. C. Baker & Sons, in the Circuit Court of Nicholas County, West Virginia, wherein Mullins sought damages for the destruction of business buildings, merchandise, fixtures and loss of profits as a result of a fire alleged to have been caused by the negligence of Kenneth Lamb, an employee or agent of the defendants, on October 7, 1955, when he was delivering gasoline to the plaintiff's place of business.

George Baker was dismissed because the evidence indicated he had nothing to do with the defendants' business. The trial of the case consumed about a week in the Circuit Court and resulted in a verdict for the plaintiff in the amount of $35,000.

The plaintiff had been engaged in the general store business in the vicinity of Dille, Nicholas County, West Virginia, for approximately thirteen years. In connection with this business, he also operated a filling station for the sale of gasoline and other petroleum products. Those businesses were conducted in two buildings located approximately six feet apart. The defendants were distributors of gasoline and petroleum products. They installed, maintained and owned the gasoline storage tanks, dispensing pumps and electrical wiring located on the property and the building owned by the plaintiff. This equipment and wiring had been placed and installed upon the property and in the buildings owned by the plaintiff for approximately ten years prior to the fire. At the time of the installation the defendants and their employees attached a vent pipe to the storage tank where the fire occurred to carry off the fumes along the wall of the filling station building extending about twelve feet from the tank and above the building. The electrical wiring in and about the filling station had some defects after installation, such as lack of insulation or short circuits. Some of the wiring was located within ten feet of the filler pipe.

About ten years before the fire and after the gasoline storage tanks had been installed, the plaintiff extended his store building to within about four to six inches of the filler pipe to the storage tank located between the store building and the filling station. He also installed gas floor furnaces in which he kept pilot lights burning and same were burning at the time of the fire.

On the day of the fire an employee of the defendants, Kenneth Lamb, delivered the gasoline. He was 20 years of age and had been working for the defendants about five weeks. He had been trained or instructed in his

duties as truck driver and in delivering gasoline for about two weeks before making deliveries himself. He had worked intermittently in his father's service station for several years before going to work for the defendants.

The store building and filling station were between 4 and 6 feet apart. The storage tanks had a capacity of about 1010 gallons each. The gas floor furnace had been installed in the store building in 1946 and was about 13 feet from the intake or filter pipe of the storage tank between the buildings. This furnace had an open flame pilot light which was located below the floor surface and was left burning continuously. The store building was not underpinned and the space under the store building was open.

The defendants did not know the location of the floor furnaces. The plaintiff had installed a fan on the store building to bring in cool air, and when the storage tanks were being filled the odor of gasoline fumes could be detected in the store building, but the defendants were not advised of this.

On October 7, 1955, when defendants' driver arrived to fill the storage tanks he measured the gasoline in the tanks and advised the plaintiff as to the amount of gasoline they would take and proceeded to fill them. When he was filling the tank between the store and filling station an unexplained fire occurred. The driver was not smoking and no one observed any gasoline overflowing the storage tank at the time of the fire. When the driver observed the fire he got a fire extinguisher from the truck and tried to put out the fire but was unsuccessful. He then got in the truck and drove it away from the fire. When the truck was driven away, the hose which had been left in the filler pipe was broken and the automatic valve on the truck closed. The truck was driven about a quarter of a mile from the buildings and parked. The truck driver then came back to the scene of the fire.

The store building and filling station and all their contents were totally destroyed.

The plaintiff and his witnesses testified that on the day after the fire gasoline was coming out of the filler pipe. This was after the building had burned but hot coals were still present on the ground around the storage tanks.

The defendant, J. C. Baker, testified that on November 18, 1955, he measured the amount of gasoline in the storage tank located between the store building and filling station and found it to contain 984.61 gallons and stated that the pumps used to take the gasoline out of the tank had been completely destroyed, thus leaving the gasoline placed in the tank without any means of removal thereof. This evidence over objection was not allowed to go to the jury because of remoteness.

An attempt was made by witnesses introduced on behalf of the plaintiff to prove damages to the buildings as to value, but it appeared that the value in each case was the cost of replacement. It is true that depreciation was mentioned but the answers were what it would cost to build new buildings.

An attempt was made to prove profits by taking 20% of the retail sale price of the merchandise; also by testimony of what profits were for a period of time before the fire in 1954 and 1955.

The defendants filed a demurrer to the plaintiff's declaration stating it was insufficient in law because it did not state facts with definiteness and certainty as to the cause of action against defendants and because it did not properly set forth the relationship between the parties. The declaration alleges duties on the part of defendants and a breach thereof and that the control and operation of the delivery of the gasoline was solely in charge of and conducted by defendants or their agent. We are of the opinion that the declaration alleges facts sufficient in law in this case, both on the proposition of primary negligence and the doctrine of *res ipsa loquitur* raised by the plaintiff during the trial of the case. See 13 Michie's Jurisprudence, Negligence, §48.

We are also of the opinion that the pleading properly set forth the relationship of the parties. A proper pleading in partnership cases is in the individual names of the partners and the pleading in this case satisfies that requirement. See *Courson* v. *Parker,* 39 W. Va. 521, 20 S. E. 583.

The defendants assign as ground of error the overruling by the court of their motion for a more particular statement of plaintiff's claim. It would appear that the plaintiff's declaration advised the defendants sufficiently of their claim in this case but this matter is within the discretion of the trial court, and in any event, when the motion is made at the calling of the case for trial it comes too late. Code, 56-4-19; *Stone* v *Safe Ins. Co.,* 109 W. Va. 739, 156 S. E. 106; 3 Michie's Jurisprudence, Bill of Particulars, §8.

The defendants contend that their motion for a judgment *non obstante veredicto* should have been sustained by the court. This point is not well taken because such motion must be based on the pleadings and not upon the evidence. We have indicated that the declaration is sufficient in law and therefore this motion is not well taken in this case. *Holt* v. *Elevator Co.,* 78 W. Va. 785, 90 S. E. 333.

Several grounds of error are assigned by the defendants dealing with the question as to whether or not the evidence of negligence was sufficient to sustain the verdict of the jury. They assert that the court erroneously submitted the case to the jury on inconsistent theories of primary negligence, the doctrine of *res ipsa loquitur* and the doctrine of last clear chance. In a case of this kind, if the plaintiff alleges specific acts of negligence and fails to prove them, he is not denied the application of the doctrine of *res ipsa loquitur* if he also alleges sufficient facts in the declaration for the application of such doctrine. *Pope, Infant* v. *Carrier Corp.,* 138 W. Va. 218, 234, 75 S. E. 2d 584. However, the doctrine of last clear chance is inapplicable where the doctrine of *res ipsa loquitur* is relied on and there is no proof of specific acts

of negligence. This is based on the fact that a recovery by the plaintiff under the doctrine of last clear chance can only be had where primary negligence on the part of the defendant is proved along with contributory or concurrent negligence on the part of the plaintiff, which, without the application of the doctrine of last clear chance, would bar recovery. *Lynch* v. *Alderton,* 124 W. Va. 446, 447, 20 S. E. 2d 657; *Belcher* v. *N. & W. Ry. Co.,* 140 W. Va. 848, 855, 87 S. E. 2d 616.

In any event the doctrine of last clear chance is not applicable to the facts in this case. The doctrine cannot come into play until a peril arises, that is, the presence of primary negligence. 38 Am. Jur., Negligence, §218. There is no question from the evidence in this case that the fire started suddenly and there was no opportunity to avert it, which is necessary for the application of this doctrine. 13 Michie's Jurisprudence, Negligence, §34. It might be well to point out that the doctrine presupposes contributory negligence on the part of the plaintiff. 13 Michie's Jurisprudence, Negligence, §36. Also, a plaintiff who relies on the doctrine of last clear chance has the burden of proving by a preponderance of the evidence that the defendant after having knowledge of the peril could have avoided the injury or damage by the use of ordinary care. *Waller* v. *Railway Co.,* 108 W. Va. 576, 152 S. E. 13. This matter is discussed in 13 Michie's Jurisprudence, Negligence, §54, wherein it is stated: "When the last clear chance doctrine is invoked, it is not enough merely to show concurring negligence. There must be evidence sufficient to persuade the impartial mind of the defendant's actionable negligence—that is, that the defendant had a clear opportunity to save the plaintiff from the consequences of his own negligence, after the defendant realized or should have realized the impending danger. When the plaintiff, being guilty of negligence, relies upon the doctrine of the last clear chance to sustain a recovery, the burden is upon him to prove by a preponderance of the testimony a state of facts which makes the rule of last clear chance applicable. * * * ".

We are also of the opinion that the doctrine of *res ipsa loquitur* is not applicable to the facts in this case. The defendants did not have exclusive control of the premises and buildings where this fire occurred. It may have occurred from causes over which the defendants had no control. The evidence is undisputed that there was an open flame within 13 feet of where the gas was being placed in the storage tank. This open flame was a pilot light on the furnace which was kept continuously lighted and possibly gasoline fumes or vapors could be suspended or spread through the air for that distance. It is contended that electric sparks from the short circuit located inside the filling station owned by the defendants may have caused this fire. However, it is not contended that this would be continuous, such as the burning of the pilot light. Regardless of this, by the mere showing of the evidence in this case, the doctrine of *res ipsa loquitur* is precluded. The reason for the inapplicability of the doctrine under the facts in this case will be found in Point 1, syllabus, *Laurent* v. *Gas Co.*, 101 W. Va. 499, 133 S. E. 116, which reads as follows: "The doctrine of *res ipsa loquitur* cannot be invoked if defendant does not have control or management of the premises or operations where the accident occurred; or where there is divided responsibility, and the unexplained accident may have been the result of causes over which defendant had no control." See also *Phillippi* v. *Telephone Co.*, 113 W. Va. 470, 168 S. E. 762.

It has been held by this Court that the doctrine *res ipsa loquitur* does not apply unless the only reasonable conclusion is that the accident happened through the negligence of the defendant. *Crotty* v. *Railway Co.*, 115 W. Va. 558, 177 S. E. 609.

The gasoline had been delivered by the defendants to the plaintiff in the same manner and at the same place for a period of at least ten years and no fire had occurred during this period. Therefore, the gas or gas fumes alone could not have been the proximate cause of the fire and this is another reason why the doctrine of *res ipsa*

*louqitur* would not be applicable, as the fumes or vapor must have been ignited by some flame or spark. This principle is well set out in 38 Am. Jur., Negligence, §300, at page 996, which reads "* * * It is not only necessary to show that the offending instrumentality was under the management of the defendant, but it must be shown that it proximately caused the injury, * * *". Where an unexplained accident can be attributed to one of several causes, or in a case of divided responsibility and the defendant is not wholly responsible, the doctrine is not applicable. 13 Michie's Jurisprudence, Negligence, §55.

We now come to the question of negligence on the part of the defendants or their agent. The proof does not support the declaration. Certain acts of negligence are alleged in the declaration but it is very questionable if the evidence in this case, considered together, would constitute negligence. There is no direct proof that any gasoline was spilled or ran over at the storage tanks when they were being filled. There is no direct proof that the defendant's employee did anything to cause the fire. There is some evidence that he was not stationed behind the truck at the time the gasoline was being put in the storage tanks, although the employee denies this. In any event, this could not have caused the fire.

Assuming that negligence was proved, it would not be actionable negligence in this case because there is nothing to show or indicate that such negligence was the proximate cause of the accident. This principle is clearly set forth in 13 Michie's Jurisprudence, Negligence, §21, in the following language: "Negligence, no matter of what it consists, cannot create a cause of action unless it is the proximate cause of the injury complained of. The two must concur. * * *". See *Jones* v. *Smithson*, 119 W. Va. 389, 193 S. E. 802.

The defendants also assign as grounds of error the refusal of the trial court to allow them to show that the storage tank in question was not full and in refusing to require the plaintiff to furnish copies of his federal income tax returns for the purpose of cross-examining the

plaintiff concerning loss of profits and in not permitting the defendant to deny allegations of negligence. It would perhaps be proper if it could be clearly shown by competent evidence that it was impossible for any gasoline to be taken or escape from the gasoline storage tank in question at the time the defendant, J. C. Baker, measured the gasoline contained in said tank, but the said defendant should not be allowed to testify as to the conclusion of law relative to the allegations of negligence contained in the declaration. It would be proper only for him to testify as to the facts relative thereto developed by proper questioning.

The refusal of the court to allow the defendants to cross-examine the plaintiff in relation to his income tax returns with regard to profits claimed to have been lost as a result of the fire and the refusal to grant a *subpoena duces tecum* for the producing of a copy of same on motion of defendants present a serious question. In such instance production of a correct copy of the income tax return satisfies the best evidence rule and such copy is admissible because it is evident that the original return which has been filed with the Director of Internal Revenue cannot be produced by the tax payer, but a copy can be obtained either from the tax payer or the Director. This matter has not been passed on in this state, but we are of the opinion that the better practice is to require the plaintiff to produce a copy of his income tax returns if he made a return and has placed in issue during the trial of the case loss of profits suffered by him as a result of the negligence of the defendants. The weight of authority in connection with this matter is that federal income tax returns are not privileged as a matter of law in civil cases where the returns are material to the claims of the parties, and we are of the opinion that it was error in such case for the trial court to refuse such motion. *Currier* v. *Allied N. H. Gas Co.*, (N.H.) 137 A2d 405; *Kingsley* v. *Del. L. & W. R. Co.*, 20 F.R.D. 156; *Konczakowski* v. *Paramount Pictures, Inc.*, 19 F.R.D. 361; *Louisville & N. R. Co.* v. *Blevins*, (Ky.) 293 S. W. 2d 246. This has been repeatedly held in the Federal Rules

Decisions, and of course in the case of *Louisville & N. R. Co.* v. *Blevins, supra,* the refusal by the court to require the plaintiff to produce copies of income tax returns was not error where the plaintiff said she had not filed income tax returns.

The defendants also assign as error that the verdict was excessive and the evidence as to damages to the buildings, merchandise, equipment and loss of profits is improper. Inasmuch as the evidence as to damage to the plaintiff's buildings indicates that it is based on the cost to replace them, such evidence would be improper and constitute error in this case. The proper measure of damages in a case of this kind, where the buildings are completely destroyed, is clearly set out in the case of *Stenger* v. *Gas Co.,* 141 W. Va. 347, 355, 90 S. E. 2d 261, wherein it is stated: "When property is completely destroyed, the amount of recovery is measured by the market value at the time of the destruction * * *".

Loss of profits was attempted to be proved based on 20% of the retail price. This method or manner would not be accurate and is merely speculative. The proper method of determining profits is concisely stated in 5 Michie's Jurisprudence, Damages, §38, in the following words: "In accordance with the general rule concerning speculative damages, mere speculative and conjectural estimates of profits which might have been made, or the loss of gains and profits which might have been made, are not a legitimate basis upon which to fix damages. Profits may only be recovered where they can be ascertained with reasonable certainty."

The proper way to prove loss of profits is the cost and expenses deducted from the sale price. This would clearly be shown from the income tax return, as well as any other items proper for deduction in order to get the accurate profit received by the plaintiff in past years. We are therefore further of the opinion that the method used by the plaintiff in attempting to prove his profits in this case was improper and that the admission of evidence of that character was erroneous.

It therefore follows from the statements contained herein that it was reversible error for the trial court to give to the jury the instructions offered by the plaintiff and in refusing to give to the jury an instruction offered by the defendants dealing with the doctrine of *res ipsa loquitur* or the doctrine of last clear chance.

Under the facts as shown in the record of this case, now before this Court, the defendants' motion made at the conclusion of the trial to direct a verdict for them should have been granted, and failing to do so, the trial court should have sustained the motion of the defendants to set aside the verdict of the jury and grant to them a new trial.

For the reasons stated herein, the judgment of the Circuit Court of Nicholas County is reversed, the verdict of the jury is set aside and the case is remanded for a new trial.

*Reversed and remanded.*