J. A. O'QUINN, PLAINTIFF, v. RAY SOUTHARD AND ACME PETROLEUM AND FUEL, INC., DEFENDANTS.

(Filed 3 February, 1967.)

1. **Negligence § 5—**

  The doctrine of *res ipsa loquitur* applies when a thing which causes injury is shown to be under the exclusive control of defendant and the accident is one which does not occur in the ordinary course of events if the person in control uses proper care; it does not apply when the premises are not under the exclusive control of defendant or when more than one inference of causation arises upon the evidence.

2. **Negligence § 21—**

  There is no presumption of negligence from the mere fact of an accident or injury.

3. **Negligence §§ 4, 5—    Res ipsa loquitur held not applicable to explosion occurring during delivery of gasoline to underground tanks.**

  The evidence was to the effect that in the delivery of gasoline to plaintiff's underground storage tanks on a still, hot day, fumes from the gasoline collected near the ground about defendant's delivery truck, that the gasoline was being delivered by gravity and no motor or engine was in operation on the delivery truck, and that suddenly the fumes were ignited, causing the injury in suit. The evidence further tended to show that plaintiff had several electric motors on the premises. *Held:* The doctrine of *res ipsa loquitur* is not applicable, since the cause of the explosion and fire is left in conjecture, and since defendant was not in exclusive control of all factors which could have caused the accident.

4. **Negligence § 24a—**

  Plaintiff's evidence was to the effect that his premises were damaged by fire resulting when gasoline fumes which collected around defendant's tank-truck during the delivery of gasoline to plaintiff's underground tanks, suddenly ignited. *Held:* The doctrine of *res ipsa loquitur* being inapplicable and plaintiff having offered no direct and positive evidence supporting the inference that defendant's negligence was a proximate cause of the fire and resulting explosion, nonsuit should have been allowed.

APPEAL by defendants from *Houk, J.,* June 1966 Civil Session of GASTON.

Action to recover damages resulting from a fire and explosion occurring at a gasoline filling station while its underground tanks were being refilled.

These facts are undisputed: Plaintiff owns a small shopping center at Lowell, in which, on September 11, 1963, he was operating a filling station. On that day, between 9:00 and 10:00 a.m., defendant Ray Southard, an employee of defendant Acme Petroleum and Fuel, Inc., backed its aluminum tanker, loaded with 8,200 gallons of gasoline, onto plaintiff's premises — between the pumps and the station — in order to refill three underground tanks. While the gasoline was being delivered, a fire and explosion occurred which extensively damaged the shopping center and completely destroyed the filling station, a small brick building, 30 feet long.

Plaintiff alleges that the fire and explosion was proximately caused by the manner in which defendants refilled the tanks in that they "negligently caused or negligently permitted to be caused an accumulation of gasoline fumes and an explosion of said fumes beneath the tractor-trailer unit while the same was refilling plaintiff's underground tanks. . . ."

Defendants denied any negligence, but alleged that, if they were negligent in any respect, plaintiff was contributorily negligent in that, while the gasoline was being unloaded, he permitted electric motors to be operated; that they emitted sparks; that he struck steel and iron tools against the concrete, likewise causing sparks; and that these sparks ignited the gasoline fumes.

Plaintiff's evidence tends to show: On September 11, 1963, the sun was shining brightly; it was a hot, quiet day with no air stirring — "one of those suffering days." When Acme's tanker arrived, plaintiff was engaged, directly in front of the station, in balancing the wheels on an automobile belonging to Jack Messer. To give the tanker access to the 3-inch fill pipes located in front of the station, Messer moved the car to the lower side of the station to a point about 8 feet to the right side of the tanker and 10-12 feet from the northernmost fill pipes. Plaintiff moved the balancing machine to the front of the car, jacked up the right-front wheel, and started it spinning in order to ascertain — before the tanker started unloading — where he should put the last weight. When Southard began pulling the hoses from the right side of the tanker, plaintiff marked the place on the tire, pulled the wheel balancer from the car, and moved it 3-4 feet away in order to put it against the building, where it ordinarily remained when not in use. It was never unplugged from the electric outlet on the north side of the building. The wheel-balancing machine (plaintiff insisted positively) had been stopped and moved from the car before Southard began unloading the gasoline.

Plaintiff had had the wheel balancer at the station for 3-4 years. For its motive force, the balancer used an electric motor,

which was controlled by a lever and encased in a metal housing. The motor ran as long as the lever was held down; when it was released the motor stopped. The switch was inside the motor.

Before connecting his lines to the tanks, Southard warned plaintiff against smoking, and plaintiff cautioned Messer against lighting cigarettes or striking a match while the gasoline was being delivered. Southard said nothing to them whatever about discontinuing work on the car. Southard then uncapped two of the fill pipes and, in the usual manner, put in the 1½-inch filler pipe. Plaintiff went back to his wheel balancer to search for a quarter-ounce weight. Placing it was all that remained to be done. He had been standing in front of Messer's car, searching for the weight 4-5 minutes, when he heard a "whoosh." Fire gushed out from under the tractor behind plaintiff, burning him on the right arm and right side of his face, which was toward the tanker. He first saw the fire "in behind the back wheels behind the muffler." It immediately flashed to the hose and the filler pipes. Southard ran to the cut-off valves on the tanker and told plaintiff "to get a fire truck." In some manner the hose from the tanker was pulled out of the ground, or burned in two. When this occurred, burning gasoline ran down the gutters alongside the highway for two blocks.

Plaintiff called the fire department from a store and warned the other occupants of the shopping center to get out. By that time the tanker had melted down to the ground. Messer's automobile, the jack, and the wheel balancer were likewise destroyed.

In front of the station, on the north side of the pumps, were two refrigerated cold drink boxes. Each had a one-fourth horsepower hermetically sealed compressor, and the motor was "on the inside of the dome." The fire damaged plaintiff in the sum of $16,088.68.

Jack Messer testified: When the fire broke out, he was facing the front of his car and looking toward the tractor-part of the tanker (which was facing north). He heard a blowing noise and fire broke out at his feet. At that time plaintiff was looking for a weight, and the wheel balancer was not in operation. It had been pulled away from the car. When Messer saw the fire, he ran and did not return to the scene for four hours.

At the close of plaintiff's evidence, defendant's motion for nonsuit was denied.

Defendant then offered evidence which tends to show: When Southard arrived at plaintiff's station, he had driven 36 miles at a speed of 50-60 MPH with the load of gasoline. The day was hot and humid, and on such a day gasoline fumes tend to stay close to the ground. He not only asked plaintiff and Messer not to smoke, but he also cautioned plaintiff "to be careful about working on that au-

tomobile." After measuring the contents of the three tanks — one for high-test and two for regular gasoline —, Southard, in order to discharge any static electricity he might have had in his body, put his hand on the truck before he began to fill the tanks. The tanker itself was equipped with an anti-static device. Southard began to fill the southernmost tank (high-test) and the middle tank (regular) simultaneously. When the high-test tank was filled in about five minutes, he detached and drained that hose and, with it, began to fill the northernmost tank. There were no motors on the tanker; it was "unloaded by gravity flow."

All the time the tanks were being filled, plaintiff, with his back to the tanker, continued to run the balancing machine as he worked on the Messer car. Southard noticed the motor; he could see the armature. When he began to fill the northernmost tank, plaintiff was still working with the wheel balancer and Messer was in the automobile holding the steering wheel. The intake to the tank was only 2-3 feet from the wheel balancer, and the car was about 5 feet from the tractor.

The fumes became so heavy that Southard went to the back of the tanker to escape them. He again told plaintiff "no smoking," but he said nothing about the motor. Just before the fire broke out, plaintiff cut off the wheel balancer and reached back to get a weight. When he did there was a "whishing noise" and fire broke out where he and Messer were working and it flew everywhere. "It was like a bolt of lightning flashed out of the sky; that's how quick it was." Southard jerked the hose out of one tank and cut off one valve. He put his foot over the hole and thereby smothered the fire at that point. By then, there was so much fire on the other hose that he could not get to it. Nor could he get to the 32-foot tanker's emergency valves or to its fire extinguisher. When the main power line to Lowell fell, Southard ran. When he was about 100 feet away, the tanker exploded. Prior to that time, no gasoline had run down the highway.

Two hours later, plaintiff told Southard that he was under the impression that a spark from the wheel balancing machine had caused the fire. He made this same statement to reporters for the Charlotte Observer and the Gastonia Gazette.

An expert electrical engineer, testifying for defendant, said that if plaintiff was using the wheel-balancing machine and cut off the motor by pulling down the lever while the gasoline was being delivered, in his opinion, the operation of the machine could have started the fire.

The jury answered the issues of negligence and contributory

negligence in favor of plaintiff and awarded $6,100.00 damages. From the judgment entered upon the verdict, defendants appealed.

*Hollowell & Stott; Horace M. DuBose, III, for plaintiff.*
*Mullen, Holland & Harrell for defendants.*

SHARP, J. This appeal presents the question whether the trial judge erred in overruling defendants' motions for nonsuit, *i. e.*, whether all the evidence, considered in the light most favorable to plaintiff, is sufficient to establish defendants' actionable negligence. *Hubbard v. Oil Co.*, 268 N.C. 489, 151 S.E. 2d 71.

Plaintiff offered no evidence as to what ignited the gasoline. Neither Southard, nor plaintiff, nor Messer (the only three persons on the premises) was smoking; no one struck a match; no tool was dropped on the concrete to create a spark. Both plaintiff and Messer insisted most positively that the wheel-balancing machine was not in operation at any time during the delivery of the gasoline. The only evidence with reference to the *motors* in the two refrigerated drink boxes tended to show that they were on the inside of a dome. The static electricity which had been generated by the movement of the gasoline in transit had been discharged before Southard attempted to deliver any gasoline at all. Furthermore, one tank had been completely filled and the other two were partially filled when the fire started. If the tanker or its equipment used for unloading the gasoline was substandard, the evidence does not so disclose. The driver was at all times in attendance, and no gasoline had been spilled prior to the fire. There is no evidence that Southard himself did anything to cause the fire — except to fill plaintiff's tanks as usual.

Plaintiff argues, however, that it was negligence to ·deliver gasoline on a hot, humid day when fumes were collecting at the site. Notwithstanding, he offered no evidence that the temperature at the filling station or the heat from the tanker was high enough to ignite gasoline fumes or that spontaneous ignition was a hazard inherent in the delivery of gasoline on a hot day. If such were the case, it would seem that plaintiff, an experienced filling-station operator, would have known of the danger and would have forbidden the delivery. So far as our research can determine, a flame, a spark, or heat of at least 700°-800° F. is required to ignite fumes from gasoline such as was being put into plaintiff's tanks. See Robert H. Perry's Chemical Engineer's Handbook (4th Ed.) Table 9-19, p. 9-33, Basic Considerations on the Combustion of Hydrocarbon Fuels, and the third edition of this handbook at p. 1584. See also *Moore v. Beard-Laney, Inc.*, 263 N.C. 601, 139 S.E. 2d 879; *Hopkins v. Comer*, 240

N.C. 143, 149, 81 S.E. 2d 368, 373. Patently, neither the heat from the tanker nor the temperature at the filling station reached any such height.

Defendants' explanation of the fire — that it was caused by a spark emitted by the motor of the wheel-balancing machine when plaintiff cut it off while the two regular-gasoline tanks were being filled — is the only specific solution which the evidence provides. Plaintiff rejects this explication and concedes that he must depend upon the doctrine of *res ipsa loquitur* to overcome the motion for nonsuit. This doctrine and the rules governing its application have often been stated by this Court: When a thing which causes injury is shown to be under the exclusive management of the defendant and the accident is one which in the ordinary course of events does not happen if those in control of it use proper care, the accident itself is sufficient to carry the case to the jury on the issue of the defendant's negligence. *Lea v. Light Co.*, 246 N.C. 287, 98 S.E. 2d 9; *Harris v. Mangum*, 183 N.C. 235, 111 S.E. 177; *Ridge v. R. R.*, 167 N.C. 510, 83 S.E. 762; Stansbury, N. C. Evidence § 227 (2d Ed. 1963). For an itemization of the situations in which *res ipsa loquitur* does not apply, see *Springs v. Doll*, 197 N.C. 240, 242, 148 S.E. 251, 252-3.

No inference of negligence arises from the mere fact of accident or injury, *Lea v. Light Co.*, *supra*, and, as pointed out in *Etheridge v. Etheridge*, 222 N.C. 616, 619, 24 S.E. 2d 477, 480:

> "It *(res ipsa loquitur)* does not apply where the evidence discloses that the injury might have occurred by reason of the concurrent negligence of two or more persons, or that the accident might have happened as a result of one or more causes, or where the facts will permit an inference that it was due to a cause other than defendant's negligence as reasonably as that it was due to the negligence of the defendant, or where the supervening cause is disclosed as a positive fact. . . ."

*Accord*, 38 Am. Jur., Negligence § 300 (1941); 65A C.J.S., Negligence §§ 220.12-.13 (1966). The doctrine of *res ipsa loquitur*, *a fortiori*, has no application if the fire was due to any voluntary action or contribution on the part of plaintiff, or "if it appears from the evidence that the accident might reasonably have been caused by plaintiff's own negligence." 65A C.J.S., Negligence § 220.13 (1966).

Applying these rules to the evidence in this case, it is clear that the doctrine of *res ipsa loquitur* is inapplicable. Defendants did not own or control the premises where the fire originated and, taking plaintiff's evidence in the light most favorable to him — which means that we assume he did not run the wheel balancer — its cause re-

mains a matter for divination. ". . . (T)he trier of the fact could only indulge in conjecture as to the cause of the fire. In such case the doctrine of *res ipsa loquitur* should not be applied." *Starks Food Markets, Inc. v. El Dorado Refining Co.*, 156 Kan. 577, 583, 134 P. 2d 1102, 1106. In holding that the doctrine of *res ipsa loquitur* did not apply to a fire occurring at the plaintiff's filling station while the defendant was delivering gasoline, a Louisiana court said in *Bruchis v. Victory Oil Co.*, 179 La. 242, 257, 153 So. 828, 832, "Here the defendant did not own or control the premises where the fire originated, but owned and controlled only the truck (tanker) and its parts."

In *Mullins v. Baker*, 144 W. Va. 92, 107 S.E. 2d 57, the plaintiff sued for damages which occurred when his filling station was destroyed by a fire which occurred while the defendant's driver was filling his storage tanks. In holding the doctrine of *res ipsa loquitur* inapplicable, the court said:

> "The defendants did not have exclusive control of the premises and buildings where this fire occurred. It may have occurred from causes over which the defendants had no control. . . . 'The doctrine of *res ipsa loquitur* cannot be invoked if defendant does not have control or management of the premises or operations where the accident occurred; or where there is divided responsibility, and the unexplained accident may have been the result of causes over which defendant had no control.' . . .
>
> "It has been held by this Court that the doctrine *res ipsa loquitur* does not apply unless the only reasonable conclusion is that the accident happened through the negligence of the defendant. . . .
>
> "The gasoline had been delivered by the defendants to the plaintiff in the same manner and at the same place for a period of at least ten years and no fire had occurred during this period. Therefore, the gas or gas fumes alone could not have been the proximate cause of the fire and this is another reason why the doctrine of *res ipsa loquitur* would not be applicable, as the fumes or vapor must have been ignited by some flame or spark. . . . '* * * It is not only necessary to show that the offending instrumentality was under the management of the defendant, but it must be shown that it proximately caused the injury, * * *' Where an unexplained accident can be attributed to one of several causes, or in a case of divided responsibility and the defendant is not wholly responsible, the doctrine is not applicable." *Id.* at 99-100, 107 S.E. 2d at 62-3.

O'QUINN *v.* SOUTHARD.

In Annot., Negligence — Delivery of Petroleum, 151 A.L.R. 1261, 1272, it is said: "Under most circumstances which have attended the delivery of petroleum products, the rule of *res ipsa loquitur* has been regarded as not applicable." Such holdings are a corollary of the rule that *"res ipsa loquitur* does not apply in explosion cases unless the thing that exploded was in the exclusive control of the defendant who is to be made liable; and where either of two persons, wholly independent of each other, may be responsible for an injury, the cause is one for affirmative proof and not for presumption." 22 Am. Jur., Explosives § 95 (1939).

Plaintiff's evidence and allegations disclose no negligence on the part of defendants. If Southard was guilty of negligence in unloading the gasoline while plaintiff was running the wheel balancer with its unenclosed motor or in failing to warn plaintiff of the danger in doing so, it is not so alleged. The occurrence of the fire does not support the inference that defendants' negligence was the most reasonable probability, nor does it exclude the idea that it was due to a cause with which defendant was not connected. 65A C.J.S., Negligence § 220.12 (1966). Even if the wheel balancer was not in operation, the refrigerated drink boxes were working. There is no evidence that the controls containing the thermostats (a possible source of sparks) were sealed.

The fire and explosion cases cited by plaintiff in which the doctrine was applied are all cases in which the equipment *and* premises were in the *exclusive* control of defendants. *Howard v. Texas Co.,* 205 N.C. 20, 169 S.E. 832; *Harris v. Mangum, supra; Newton v. Texas Co.,* 180 N.C. 561, 105 S.E. 433. Where the gasoline tank which exploded was not under the exclusive control of the defendant, *res ipsa loquitur* has not been applied. *Hopkins v. Comer, supra.*

Plaintiff having offered no direct and positive evidence from which it can reasonably be inferred that defendants' negligence proximately caused the fire and resulting explosion, and the doctrine of *res ipsa loquitur* being inapplicable, defendants' motion for nonsuit should have been allowed. *Hubbard v. Oil Co., supra.*

The judgment of the court below is

Reversed.