LOREN C. KECK, Plaintiff and Respondent v. BAIRS, INC., and DONALD L. OLSON, Defendants and Appellants.

No. 11296.
Submitted January 3, 1968. Decided February 14, 1968.
Rehearing denied March 8, 1968.
437 P.2d 380.

Small & Cummins and Carl Hatch, Helena, Floyd O. Small (argued), Helena, for appellants.

Lloyd J. Skedd, (argued), Helena, for respondent.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This is an appeal from a judgment entered upon a verdict for plaintiff after a motion for a new trial was denied. The jury verdict was for $31,560.00.

Plaintiff, the operator of a service station, sued to recover damages for personal injuries and property losses resulting from an explosion and fire at the East Helena Cut Rate Gas Station on January 3, 1966. It was alleged that the defendant Olson, who was employed by defendant Bairs Inc., was negligent in the delivery of gasoline and that this negligence was the proximate cause of the damage. Hereinafter plaintiff will be referred to as Keck and defendants as Bair's and Olson, respectively.

Olson arrived at Keck's service station shortly after 8:00 A.M. to deliver a load of gasoline in a truck and tanker belonging to Bair's. The delivery was to an 8,500 gallon underground storage tank located about 18 feet west of the Keck station. The truck and tanker were parked perpendicular to the west side of the station so that the motor on the truck was facing the station and within a few feet of the building.

Olson prepared to unload by hooking up the hoses, checking the valves, etc. He went into the station, checked with Keck as to measurements in the tank, returned to the truck, started the pump and began pumping the gasoline. The pump was driven by the truck motor with a "power take off" so the motor was running. Normally the motor would run at about 700 r. p. m. and would deliver some 150 gallons of gasoline per

minute, although the record does not show what the speed or delivery rate was. The pump was a three inch pump with a reducer to a two inch hose. On the end of the hose was an "elbow" and an eleven inch "downspout." The downspout went inside a three inch feeder pipe into the underground tank which was four feet below.

It was six degrees below zero that morning. Olson, during the pumping delivery operation left the truck "unattended" in the sense that he went inside the station office, but could see his truck from inside the office.

A short time later Olson heard the motor "rev" up, and realizing something was wrong, ran outside to discover that the downspout had come out of the filler pipe and was spraying gasoline on the ground. He shut off the pump, reinserted the downspout and returned to the station.

A large amount of gasoline, just how much is not known, but one estimate was 2,000 gallons, was sprayed toward the station. The gasoline ran around the building and into the building under a large sliding door. Keck saw the gasoline, grabbed a shovel and tried to ditch it past the station door. Most of the gasoline was diverted around the building, but some, about "shoesole deep," had spread into the lube bay or garage part of the station. Keck started to wash the gasoline into a sump drain with a water hose. Olson grabbed a push broom and began sweeping the gasoline. Keck's wife came, and Keck told her to disconnect the thermostat to the furnace and he pulled the plug on a deep freezer. Then Keck's wife took the hose and held it while Keck started for the office.

Just how long a period of time was involved is not clear from "less time than it would take to tell, maybe two or three minutes" to "five minutes or even fifteen minutes."

The fumes from the gasoline ignited. The explosion blew Olson out of the front door of the lube bay. Keck and his wife were trapped inside. They finally managed to open the door. Mrs. Keck was on fire. Keck pulled Mrs. Keck through the

fire. They slipped on the ice but were finally pulled out of the fire and taken to a hospital.

Mrs. Keck died some eight days later; Keck was hospitalized for some time as was Olson.

The door and windows in the lube bay had been left closed. Additionally, there was a small furnace room directly back of the lube bay in which a gas furnace, a gas water heater and an electric refrigerator were kept. This room sat several inches above the lube bay, and the pilot lights were about eight inches off the floor of the furnace room.

The only evidence as to just where the ignition of the gas fumes took place was from Olson, the driver, who testified that, "it seemed to appear in the far left-hand corner;" and again "in the rear of the building." Other than that, there was much speculation as to the cause of the ignition ranging from sparks from the motor of the tanker, static electricity, pilot lights, etc. As to what may have caused the motor of the tanker to "rev up", again the only explanation came from Olson, who speculated that it might have been "fumes" that caused the diesel motor to "rev up". As to what may have caused the downspout to come out, there was speculation as to the "rev up", pressure on the hose, oscillating or shaking of the hose, the shortness of the downspout, back pressure from the tank, etc. Out of all this, it is fair to say that the cause was unknown.

Keck brought the action against both Olson, the driver, and Bair's Inc., his employer and wholesale distributor of the gasoline and fuel oil, alleging that Olson was negligent in the manner of unloading the gasoline, and that because of his negligence the gasoline spilled onto the premises of Keck and subsequently exploded and burned, causing the injuries and losses about which he complained. The defendants denied any negligence on Olson's part which proximately caused the damages; and affirmatively asserted that Keck failed to use caution necessitated by the situation. Consequently, defendants

alleged that plaintiff's own conduct contributed as a proximate cause to the explosion and fire, and that he assumed the risk inherent in the dangerous condition.

The issues for review are:

(1) Whether the court, by its instructions and its rulings during final argument, improperly directed a verdict against the defendants, thereby creating a conflict in the instructions which tended to confuse the jury and to deny it the proper exercise of its function;

(2) Whether it was error for the court to give instruction No. 8;

(3) Whether the court, by its instructions, improperly applied the doctrine of *res ipsa loquitur* to this case;

(4) Whether the court, by refusing to instruct the jury that the spillage of gasoline presented only a dangerous condition on the premises of the plaintiff, which in and of itself was not the cause of the damages and injuries to plaintiff, severely limited defendants' affirmative defenses of contributory negligence and assumption of risk;

(5) Whether the court, by its instructions, improperly applied the sudden emergency doctrine to this case; and

(6) Whether the court, by its instructions, permitted the jury to consider for compensation purposes, any infirmities in plaintiff's physical condition not caused by the accident.

Issues 1 and 2 are interwoven and will be considered together. Plaintiff, at the completion of the testimony, moved for a directed verdict on the grounds that (1) the evidence showed that driver Olson was guilty of negligence as a matter of law; and (2) that there was no showing that Keck was guilty of contributory negligence or assumed the risk and that plaintiff, under the circumstances, acted as a reasonably prudent person would. The motion was denied.

The settlement of instructions then was had. Instruction No. 3, which had been proposed by the defendant, was given. It

read: "The issues to be determined by you in this case are these:

"First: Were the defendants negligent? If your answer to this is 'no,' you will return your verdict for the defendants and you will not consider the matter further; you will then notify the bailiff, who will return you into Court. If you answer that question 'yes,' you will have a second issue to determine, namely:

"Was that negligence a proximate cause of any injury to the plaintiff?

"If your answer to this question is 'no,' you will return your verdict for the defendants and you will not consider the matter further; you will then notify the bailiff. If your answer is 'yes,' you must then find on a third question:

"Was the plaintiff guilty of contributory negligence, which negligence contributed as a proximate cause of plaintiff's injury?

"If your answer to this question is 'yes,' you will return your verdict for the defendants and you will not consider the matter further; you will then notify the bailiff; but if you answer this question 'no' and you have previously found that negligence on the defendants' part was a proximate cause of the plaintiff's injury, you must then fix the amount of plaintiff's damages, if any, and return a verdict for his favor for the amount so determined, if any.

"(As indicated in this instruction, you should first determine the question of liability before you undertake to fix an amount that would compensate the plaintiff for damages, if any, found to have been suffered.)"

Plaintiff's proposed Instruction No. 13 was given as Instruction No. 7. It reads as follows:

"You are instructed that from the happening of the fire involved in this case, as established by the evidence there arises an inference that the proximate cause of the fire was some negligent conduct on the part of the defendants. That infer-

ence is a form of evidence, and if there is none other tending to overthrow it, or if the inference preponderates over contrary evidence, it warrants a verdict for the plaintiff. Therefore, you should weigh any evidence tending to overcome that inference, bearing in mind that it is incumbent upon the defendants to rebut the inference by showing that they did, in fact, exercise ordinary care and diligence or that the fire occurred without being proximately caused by any failure of duty on their part."

Defendant objected to this as follows: "Mr. Small: Yes, I want to object to that. Comes now the defendant and objects to plaintiff's proposed instruction number 13, in that it assumes to inject into this case the doctrine of res ipsa loquitur; that the instruction is obviously given under the authority of Harding versus H. F. Johnson, and that the facts in the instant case, as disclosed by the evidence here, are such as to distinguish this case from the Johnson case, in several particulars, including the following, to-wit: that here, in the instant case, there is no element of exclusive control under the defendants, as was shown in the Johnson case. On the contrary here, the plaintiff, as shown by the evidence, was present and in the management and control of the premises at all times, and upon the further ground, that here, there was a lapse of time between the spillage of the gasoline and the explosion and fire, which was not present in the Johnson case, and that here, there is substantial evidence of the active participation, and activity on the part of the plaintiff in the events leading up to the explosion and fire, and subsequent to the leakage, which clearly distinguishes this case from the Johnson case, and eliminates the propriety of the application of res ipsa loquitur doctrine.

"COURT: The objection is overruled, and the instruction is given. Other instructions in here, perhaps, may be found to be based on Harding against H. F. Johnson, 126 Mont. 70, [244 P.2d 111,] which is a case almost identical with the instant

case, and that the rule announced in that case, and the instruction was taken from that case. It will be given."

Then Instruction No. 8, heretofore set forth as Issue No. 2, was given. The exchange concerning it was as follows:

"COURT: All right, number 29 is withdrawn. Let's see, the modification of the next one, the one that you interposed your objection to, if you will, to the instruction as it was proposed, number 30; state your objection.

"MR. SMALL: Comes now the defendant, and objects to plaintiff's proposed instruction number 30, upon the ground that,—let's see—it, in effect, constitutes a directed verdict on the question of liability, and that it does not take cognizance of the right of the defendant to show, even under the doctrine of res ipsa loquitur, that the defendant was not negligent, and further that it ignores the right of the defendant to rely upon the defense of contributory negligence.

"COURT: All right, it is sustained, and the Court will modify that instruction, and give it as Court's instruction number 3. Is there any objection to Court's number 3?

"MR. SKEDD: I object to the modification.

"COURT: All right, put in your objection.

"MR. SKEDD: The plaintiff—

"COURT: I'll give the instruction the same as it was.

"MR. SKEDD: No, wait a minute—pardon me, that's right, I have no objection.

"COURT: Do you have any objection, Mr. Small?

"MR. SMALL: We object to it, just on the ground that it contains a statement that the defendant, Donald Olson, was negligent, as a matter of law, and upon all the grounds heretofore stated to plaintiff's offered instruction number 30.

"COURT: Objection is overruled, and it is given."

Court's Instruction No. 8 is as follows:

"You are instructed that the driver, the defendant, Donald L. Olson, was negligent as a matter of law in permitting such a

highly inflammable commodity as gasoline to escape at a place where it was likely to and did run into the property of another. This does not exclude any of the defenses of the defendant, including that of contributory negligence."

At first blush, as the appellant vigorously asserts, Instruction No. 3 appears inconsistent with Instruction No. 8. In No. 3, the jury was to answer whether defendant Olson was negligent. In No. 8, it would appear that the court ruled as a matter of law that the defendant driver was negligent. However, Instruction No. 4 dealt with proximate cause; Nos. 5 and 6 with duty and care; No. 7, as previously quoted, with proximate cause and the inference of negligence, or as expressed by the defendant in his objections, the doctrine of res ipsa loquitur. The thrust of the defendants' objections in the main was that the instruction took away the defenses of proximate cause, even though defendants were negligent, contributory negligence and assumption of risk.

But, very clearly, the defendants were not limited. Instruction No. 8 so states. It is made even more clear in the record which recites the subsequent exchanges and the final argument. We shall not burden this opinion by quoting the argument, but suffice it to say that defense counsel vigorously pursued his defense.

As indicated by our fact recitation and even the objections of defense counsel, negligence on the part of the driver was rampant, but the only real question was whether the negligence was the proximate cause of the damage, because the defense asserts that the subsequent situation was such that contributory negligence and assumption of risk occurred, or put another way, that plaintiff himself was the proximate cause of his own injury.

But, the time interval from two to five to fifteen minutes, the active participation of the defendant Olson in attempting to wash away the gasoline, belies contributory negligence as the proximate cause sufficient for that question to be answered

by the jury verdict. We hold then that no prejudicial error occurred. We might say, as an aside, that the defendants really got more than they were entitled to.

In the Montana case of Harding v. H. F. Johnson, Inc., 126 Mont. 70, 82, 244 P.2d 111, this court said:

"* * * The undisputed facts justified an instruction that the driver * * * was negligent as a matter of law in permitting such a highly inflammable commodity as gasoline to escape at a place where it was likely to and did run into property of another."

This applies here, but of course, as we have tried to set out, the defense still had its opportunity to show that the negligence was not the proximate cause, or that contributory negligence or assumption of risk were defenses.

Moving on to Issue No. 3, whether the doctrine of res ipsa loquitur was properly applied, we look again to Harding v. H. F. Johnson, Inc., supra. We shall not repeat nor quote the discussion of res ipsa from that case, but observe that the instructions here were identical. Appellant vigorously attempts to distinguish the two cases. In the instant case, plaintiff was there and assumed to remedy the spillage of the gasoline by ditching and then hosing. He was joined in his efforts by driver Olson. In the Harding case, no one but the driver was there, as the station employee after observing the spilled gasoline in the garage, walked away and went to the post office thus leaving the driver as the only person on the premises and in control of the operation at the time of explosion and fire.

We hold that this is really no true distinction as the instructions in both cases left it for the jury to determine the issue of proximate cause. Appellant asserts that the causative agent in the instant case was the pilot light or lights in the furnace room. Yet, the evidence shows that after the explosion and fire, the furnace was intact! We repeat that there is no ques‑ tion as to how the gasoline and fumes got into the station; but the specific cause, whether the pilot light, an electrical spark,

static electricity, or the motor of the truck, were all possibilities.

Appellant has cited to this court two cases, the rulings of which would seemingly make the doctrine of res ipsa loquitur inapplicable to the instant case. These cases are Mullins v. Baker, 144 W.Va. 92, 107 S.E.2d 57, and Cosden v. Wright, 202 Okl. 211, 211 P.2d 523. Both of these cases are factually similar to the case at hand in that they concern fires which occurred while gasoline was being unloaded from a tank truck into storage facilities. In each of the two cases, the cause of the fire was uncertain, but may have resulted from conditions not under the control of the defendant. In neither case was there a situation presented such as occurred in the case at hand —the spillage of gasoline. Both cases in effect ruled that res ipsa will only apply where there was a reasonable probability that the accident occurred through the negligence of the defendant. When the cause of the accident was not certain, and some of the conditions that might have caused the accident were not under the control of the defendant, there was not sufficient reasonable probability that the accident was caused by some act under the control of the defendant to apply the doctrine.

The facts of the above cases were sufficiently different from the instant case to render their rulings inapplicable here. The accident here was such that it would not have occurred without negligence. The thing which caused the accident, the tanker and the spillage therefrom, were completely under the control of the defendant. Therefore there is no unfairness in raising an inference of negligence upon his part.

This is not to say that the defendant is precluded from establishing contributory negligence on the part of the plaintiff or from establishing that his negligence was not the proximate cause of the accident. However, it is not a requirement of the doctrine of res ipsa that the evidence as presented by the plaintiff establish that the act of the defendant was not

only the cause but the proximate cause of the injury sustained.

Even if the above cases were not distinguishable from the case at hand, we hold that the ruling in the Harding case is the better rule and will be applied by this court. When the cause of the accident is shown, res ipsa will apply even if the proximate cause of the accident may not be known.

█ Appellant also presented for this court's consideration the case of Stiles v. Gove, (USCA 9th Cir. 1965) 345 F.2d 991. In that case the Federal Circuit Court of Appeals for the Ninth Circuit stated that it was the rule in Montana that the doctrine of res ispa loquitur is limited to cases in which the evidence does not show the precise cause of the accident. Contrary to what the appellant may say, the evidence does not conclusively show that the pilot light was the cause of the accident. Consequently this rule does not prevent the application of the rule of res ipsa.

█ Appellant's fourth contention, that the trial court erred in failing to instruct the jury that the spilled gas constituted a dangerous conditions, is also without merit. Appellant's proposed instruction upon the matter was taken from the case of Staff v. Montana Petroleum Co., 88 Mont. 145, 291 P. 1042. In the case of Harding v. H. F. Johnson, supra, this court at p. 79 of 126 Mont., at p. 116 of 244 P.2d, stated why such an instruction would not be applicable to a case such as this. In that case we said:

"We think too that this case is distinguishable from those where it is know that the act of a third person in lighting a match in a place where the danger was known to exist was held to be the proximate cause of the fire as illustrated by the cases of Globe & Rutgers Fire Insurance Co. v. Standard Oil Co., 158 La. 763, 104 So. 707; and Staff v. Montana Petroleum Co., 88 Mont. 145, 291 P. 1042."

In any event, the thrust of appellant's objection to the failure to give this instruction was that it virtually made ineffectual his affirmative defenses of contributory negligence and

assumption of the risk. We will again repeat that appellant's counsel made ample comment on these defenses, and hence, there was no prejudice.

Appellant's fifth contention, that the instruction on the sudden emergency doctrine should not have been given, is also without merit. We hold that this is a proper place for the application of this doctrine, and again, did not nullify the affirmative defenses of assumption of risk and contributory negligence.

Appellant's last contention, as to the amount of damages, is also without merit. The particular instruction in question is No. 41 which reads:

"Also such sum as will reasonably compensate the plaintiff for any loss of future earning power occasioned him by the damage in question. In fixing this amount, you may consider what plaintiff's health, physical ability, and earning power were before the accident, and what they are now. You may also consider the nature and extent of his injuries and whether or not they are reasonably certain to be permanent. If not permanent, you consider the extent of their duration. All of these matters are considered in order to determine, first, the effect, if any, of his injury upon his future earning capacity and, second, the present value of any loss so suffered."

This instruction has been approved before by this court. See Bourke v. Butte Electric & Power Co., 33 Mont. 267, 83 P. 470; Mullery v. Great Northern Ry. Co., 50 Mont. 408, 426, 148 P. 323; Bracy v. Great Northern Ry. Co., 136 Mont. 65, 71, 343 P.2d 848; and Montana Jury Instruction Guides, No. 30.04. The instruction is a fair one and contrary to appellant's contention does not allow the respondent to be compensated for injuries not caused by the accident. This instruction along with instruction 38 clearly indicates that the respondent is to get compensation for only those injuries proximately caused by the accident. In order to assess damages for loss of earning power, the jury must know about the respondent's physical

condition prior to the accident in order to ascertain what his earning power then was. This instruction allows that and as such is correct.

There being no error committed by the trial court, the judgment is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES ADAIR, JOHN CONWAY HARRISON and HASWELL concur.