CONSOLIDATED FREIGHTWAYS CORPORATION, of
DELAWARE, A DELAWARE CORPORATION, PLAINTIFF AND RE-
SPONDENT, v. CONTINENTAL OIL COMPANY, A DELAWARE
CORPORATION, DEFENDANT AND APPELLANT.

No. 11839.
Submitted August 31, 1971.
Decided September 23, 1971.
488 P.2d 1138.

Keller, Magnuson, Reynolds & Drake, Paul F. Reynolds, argued, Helena, for defendant and appellant.

Hughes & Bennett, George T. Bennett, argued, Cannon, Smith & Garrity, Helena, for plaintiff and respondent.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This is an appeal from a judgment in the amount of $22,200 entered on a jury verdict. The amount covered the loss to plaintiff as a result of an explosion and fire which destroyed plaintiff's tanker truck while it was being unloaded in defendant's terminal.

Plaintiff, respondent here, is a common carrier. Defendant, appellant here, maintains a terminal and bulk plant on the Yellowstone Pipeline at Helena where it stores, and unloads fuels. Plaintiff and defendant had a contractual relationship known as a "Keystop Loading Plan" whereby defendant trained truck drivers who loaded defendant's products as to the use of defendant's pumping and other equipment used to load vehicles driven by them, and thereafter issued to such drivers keys to the terminal which gave them "keystop privileges" under which the drivers could load their trucks. Pete Anderson, driver for plaintiff, was a driver with "keystop privileges."

On August 2, 1966, at 3:30 p.m., during regular working hours, Anderson drove plaintiff's tanker truck unit to the terminal for the purpose of returning 150 gallons of marine gasoline. At the terminal were Jack Miller, an employee of defendant who was acting as terminal foreman during the absence of the regular foreman, and Jack Harrison, the district bulk agent for defendant.

There was some discussion between Anderson, Miller and Harrison concerning the return of the product. The marine gas was intended to be unloaded in a special tank, tank #34, used solely for that purpose. Miller and Harrison walked to tank #34. Anderson drove the tanker truck to the tank. After certain activities in connecting the tank truck to the storage tank, the un-

loading was commenced. Just who of the three men did what is in conflict.

Tank #34 had a piping system which included a stationary pump integrated into the system. The system had valves which when properly operated allowed fuel to be placed into storage from railroad cars, into storage from tanker trucks, and out of storage to tank trucks. It appears to be agreed that on this day, August 2, 1966, a valve in the piping system, a check valve, was not properly used. The tanker truck contained its own pump and, after the connection between the truck tank and storage tank was made, the truck pump was used. The aforementioned check valve caused the gasoline to be pumped against the stationary pump, breaking the pump housing and spraying gasoline over the area. The gasoline was sucked into the air intake of plaintiff's diesel motor causing it to "run away" and fire occurred destroying the truck.

Anderson, the truck driver for plaintiff, was injured by burns he received when he climbed into the truck cab to "kill" the motor by jamming the truck into gear. Anderson has sued for his injuries in a separate action.

Heretofore, we have referred to the "Keystop Loading Plan." The instant case did not involve "loading" under the plan at the main loading rack. Rather, it involved a return of goods and its "unloading." As to tank #34, where this accident occurred, the agreed statement of facts in the pretrial order provided:

"Defendant [Continental] does not contemplate that any Consolidated driver should return any petroleum products at this terminal without a Continental Oil Company employee being present. Defendant does not train Consolidated Freightways Corporation drivers on how to return products to its Helena terminal. At no time prior to this fire had defendant ever trained or informed Pete Anderson how to unload marine gasoline into the marine gasoline storage tank at this terminal. Defendant's rule in force at the time of the fire in question was that before any unloading could be accomplished an employee of defendant had to be present."

Thus, tank #34 was under the exclusive control of defendant. Defendant's employee Miller was present and was the acting terminal foreman.

In the same pretrial order, defendant stated its contentions thusly:

"Defendant contends that whereas it had a right to control the unloading of the fuel in question, that it did not exercise this right and that Plaintiff's employee, Pete Anderson, did assume and exercise control over the unloading process. * * *

"That because of Plaintiff's employee, Pete Anderson's assumption of the control over the setting of the valves in question, that he either assumed the risk in behalf of the Plaintiff, CONSOLIDATED FREIGHTWAYS CORPORATION, or was guilty of contributory negligence in the setting thereof."

Thus the contentions of the parties were: Plaintiff contended that the unloading operation was at all times required to be and was in fact under the control of defendant's employees and that therefore anything done or omitted was the responsibility of the defendant. Defendant contended that while it may have retained the right of control, it had surrendered that right and plaintiff's employee had improperly assumed control and taken over supervision of the unloading operation. These contrary contentions presented the fact question for the jury.

Defendant on appeal raises seventeen issues for review, all concerned with instructions either given over objection or refused. Essentially defendant quarrels with the instructions given on the basis that the jury was not allowed to consider defenses of contributory negligence or assumption of risk. However, a fair reading of all instructions leads to the conclusion that the defenses of contributory negligence and assumption of risk were considered by the jury, if the defendant had surrendered *control* of the unloading operation to plaintiff. Plaintiff contends that this is more than defendant was entitled to, contending that one who handles a dangerous product cannot escape liability by "surrendering control." In Instruction No. 20, the court instructed:

"If you find that the Defendant did not retain the right of control, then you will consider the question of contributory negligence or assumption of risk on the part of the Plaintiff."

In Instructions Nos. 31, 32, 33 and 34 the court instructed further along that line. Without attempting to analyze each instruction, we conclude that defendant was not prejudiced by the instructions given and refused concerning the defenses of contributory negligence and assumption of risk.

Defendant cites Keck v. Bairs, Inc., 150 Mont. 562, 437 P.2d 380 and Harding v. H. F. Johnson, Inc., 126 Mont. 70, 244 P.2d 111, urging the proposition that both cases recognize that the defenses of contributory negligence and assumption of risk are available in a case such as the instant one. We agree, but again say, that under the instructions given the jury here, the jury did have those defenses to consider and defendant was not prejudiced thereby.

Defendant further urges error in the court's Instructions Nos. 14, 15, and 17 involving the degree of care owed by defendant to plaintiff. All three instructions recognized that the "highest degree of care" was required. Defendant's own Instruction No. 6 used terminology of "extreme caution." *Keck* establishes the proposition that persons storing inflammables and explosive substances are bound to exercise the highest degree of care. No error appears in that regard. Defendant goes on to urge that the degree of care is the same for plaintiff here as for defendant, and thus since the instructions only applied to defendant, they were erroneous. This might be a valid argument in a given set of circumstances but here, in the context of the instructions as they applied to the evidence, we fail to see any prejudice.

In this case the infrequent unloading operation was exclusively reserved by defendant by contract and by rule and regulation. Miller, the acting foreman, did not know of the check valve. Harrison, the defendant's bulk agent who had similar facilities for his own use at the terminal, did not know about the check valve. None of the three men knew of it. Clearly the defendant

company should have had a man in charge fully capable of handling unloading operations.

Under the circumstances here, the trial court was doubtless very near to granting a directed verdict on liability but chose to allow the jury to consider proximate cause and the defenses of contributory negligence and assumption of risk.

We find no error and affirm the judgment.

MR. CHIEF JUSTICE JAMES T. HARRISON, and MR. JUSTICES JOHN C. HARRISON, HASWELL, and DALY, concur.